UNITED STATES, Appellee

v.

Manasses A. PAIGE, Lance Corporal
U.S. Marine Corps, Appellant

No. 08-0805

Crim. App. No. 200600587

United States Court of Appeals for the Armed Forces

Argued March 17, 2009

Decided July 1, 2009

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.  STUCKY, J., filed a
separate opinion dissenting in part and concurring in the
result, in which RYAN, J., joined in Part II.

Counsel

For Appellant:  Captain Kyle R. Kilian, USMC (argued).

For Appellee:  Lieutenant Commander Paul D. Bunge, JAGC, USN
(argued); Lieutenant Timothy H. Delgado, JAGC, USN (on brief);
Brian K. Keller, Esq.

Military Judge:  Daniel J. Daugherty

**This opinion is subject to revision before final publication.**

United States v. Paige, No. 08-0805/MC

Judge ERDMANN delivered the opinion of the court.

Lance Corporal Manasses A. Paige entered a not guilty plea to the offense of rape. A general court-martial with members found him guilty.[1] At trial, the Government's theory was that the victim was incapable of consent as a result of alcohol intoxication. Both parties presented witnesses to describe the victim's condition on the night of the incident. During closing argument, trial counsel argued that evidence of the victim's condition at the time of the rape and immediately following the rape was uncontradicted. Arguably, Paige himself was the only person who might have had information to contradict the Government's evidence on the victim's condition during the relevant time period, and Paige did not testify. Trial counsel also argued that to establish a mistake of fact defense as to consent, Paige would have to "assert that his mistake was honest."

"Members of the armed forces, like their civilian counterparts, may not be compelled to incriminate themselves in a criminal case." United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005) (citing U.S. Const. amend. V; Article 31(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831(a) (2000)). A military accused has the right not to testify, and

---

[1] Paige was also convicted, consistent with his pleas, of dereliction of duty, disrespecting a noncommissioned officer,

"trial counsel may not comment directly, indirectly, or by innuendo, on the fact that an accused did not testify in his defense." United States v. Mobley, 31 M.J. 273, 279 (C.M.A. 1990) (citing Griffin v. California, 380 U.S. 609, 615 (1965)). We granted review to consider whether trial counsel's remarks amounted to an improper comment on the fact that Paige exercised his Fifth Amendment right to not testify in his defense.

We conclude there was no plain error in trial counsel's references to uncontradicted evidence during closing argument. We further conclude that while trial counsel committed plain and obvious error in arguing that to establish a mistake of fact defense as to consent, Paige has to "assert that his mistake was honest," this error was harmless beyond a reasonable doubt. Therefore we affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals. United States v. Paige, No. NMCCA 200600587, 2008 CCA LEXIS 223, 2008 WL 2620094 (N-M. Ct. Crim. App. July 1, 2008) (unpublished).[2]

---

misusing e-mail, assault, and breaking restriction. This appeal only involves the rape conviction.

[2] On appeal before the Court of Criminal Appeals, Paige raised ten assignments of error. See Paige, 2008 CCA LEXIS 223, at *2, 2008 WL 2620094, at *1. The lower court ordered a hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), to address Paige's allegations of ineffective assistance of counsel. Id. The lower court ultimately found that all Paige's claims, including the ineffective assistance of

BACKGROUND

At trial, Paige stipulated to the fact that he had intercourse with a female private, Private First Class (Pfc) C. The incident occurred in Pfc C's room at the barracks after several hours of drinking. Paige also stipulated to the fact that one hour after the incident Pfc C's blood alcohol level was 292 mg/DL. Relying on testimony of witnesses who described Pfc C's condition before, during, and after the incident, as well as the testimony of a substance abuse expert, the Government's theory was that Pfc C was too intoxicated to be capable of consent. The defense, also relying on the testimony from witnesses and substance abuse experts, raised the possibility that Pfc C cycled through different states of consciousness. Paige's defense was that the Government failed to prove lack of consent. The defense also maintained that the defense of mistake of fact as to consent applied.

1. Trial Testimony Regarding Pfc C's Condition

During the trial, the Government called Pfc C as a witness. She testified that the last thing she remembered before waking up in the hospital was playing a drinking game with Paige. Pfc C said that she did not remember having sex with Paige and denied that she consented to sex.

---

counsel claim, lacked merit. Id. at *17-*18, 2008 WL 2620094, at *6. The lower court summarily disposed of the issue now before us. Id.

A number of individuals who observed and interacted with Pfc C before and after the rape testified about her condition and appearance. The Government's witnesses included: Lance Corporal Richardson, one of Pfc C's roommates; Lance Corporal Hobbs and Lance Corporal Creaser, two Marines who lived in the barracks; two corpsmen who responded to the scene; and a military policeman who responded to the scene. The defense witnesses who described Pfc C's condition included Lance Corporal Coon, Pfc C's other roommate, and the emergency room doctor who treated Pfc C.[3]

Lance Corporal Coon described what happened in the hours before the intercourse. Coon testified that she and Pfc C were in their barracks room with Paige for about two to three hours. Initially they were just talking and playing video games. At some point Paige went out and came back with alcohol. Pfc C and Paige started playing a drinking game. After Pfc C consumed one beer and an unspecified amount of liquor, the three of them went to the barracks' smoke pit for about fifteen minutes.

Coon testified that when they were at the smoke pit Pfc C was hugging everybody, talking to a lot of different people, laughing, and giggling. She testified that Pfc C stumbled from

---

[3] Other witnesses testified on matters not related to personal observations of Pfc C's condition that night, such as the investigating officer who took Richardson's statement; a witness on Richardson's character for truthfulness; and a servicemember

person to person and needed help to stand.  When they left, Coon
and Paige helped Pfc C into the building, "dragging [her] up the
steps."  Coon indicated that Pfc C's speech was not clear and
she was "[k]ind of mumbling."  Coon explained that when they got
to the third deck, "I was on one side and Paige was on the other
side and she was leaning on us . . . we basically had to drag
her . . . ."

   Lance Corporal Hobbs provided another perspective as to Pfc
C's demeanor at the smoke pit.  Hobbs testified that Pfc C was
constantly moving when he saw her, although he did not notice
any lack of balance or see any stumbling.  He also confirmed
that she hugged some friends, was constantly laughing and
giggling but was coherent when she spoke.  In describing Pfc C's
exit from the smoke pit, Hobbs testified that she walked about
fifteen feet to the barracks and once she got to the stairs,
"[s]he stumbled up the first set of steps and used the railing
and one other Marine as assistance getting up those back steps."

   While Coon and Pfc C were at the smoke pit, their roommate
Lance Corporal Richardson returned to their room.  She found it
in disarray with a liquor bottle, shot glasses and a six pack on
the floor.  As Coon and Pfc C were underage, Richardson went
looking for them to find out what was going on.

---

who had interacted with Paige but not Pfc C.  Both sides
presented testimony from substance abuse experts.

Coon testified that when she and Paige brought Pfc C to the room they laid her "on her rack," which was the lower level of the bunk beds in her room. Coon agreed with trial counsel's characterization during cross-examination that Pfc C was quiet, that her body looked "lifeless" and "limp," that she had no movement in her arms, legs, or hips, and that Pfc C could not pick up her head to turn and look at her.

Richardson returned to the room and encountered Coon, Paige and Pfc C.[4] Richardson testified that Pfc C was "lifeless," "just laying there." She said that "[h]er eyes were just rolled back in her head and she was just sprawled out and there's no movement"; "[h]er eyes were just fluttering and she was . . . mumbling [and] not making any sense . . . ." At Richardson's request Paige left the room. Richardson then left to talk with a friend, Lance Corporal Creaser, who lived across the hall. Coon testified that she started to clean the room and left to take the trash to the dumpster. At that point Pfc C was alone in the room.

Richardson testified that she was gone about five minutes and when she returned to her room, she found Paige on top of Pfc C having intercourse with her. Richardson told him to get off

---

[4] Richardson testified that when she first returned to the room Coon was there but she did not remember whether Pfc C was there. She went to take a shower and when she returned, Coon and Paige were in the room and Pfc C was laying on her rack.

and he said something like "nah, nah, it's cool. She wants it, she said she wants it." Richardson described Pfc C as "just lifeless," "in really bad shape and her eyes rolled back in her head." She testified that Pfc C did not react when she walked into the room or when Paige got off her. In describing Pfc C's condition, Richardson testified that "she was just laying there limp the whole time with her arms out to her side . . . she wasn't moving at all." Richardson testified that Pfc C's pants were lowered to her knees and she made no attempt to pull her pants up or roll over. Richardson yelled at Paige to get out. He fumbled to get his pants up and ran out of the room. Richardson called the duty NCO to report the incident and then went down to the duty desk to make sure the military police were coming.

Coon testified that she had been gone from the room for about five to ten minutes and when she returned "[Pfc C] was on her bed and Richardson was on the phone. [Pfc C] had one pant leg off and she had one boot off." Coon testified that Pfc C was "[n]ot responsive. She was more like in her own little world . . . off in a daze." Coon indicated that Pfc C had not moved from the spot that she was in before Coon left to go to the dumpster, that Pfc C was exposed and not moving, and that Pfc C "was dazing off into space" as Coon tried to put her

clothes back on her.  Coon also testified that she "had to drag" Pfc C to the bathroom at Pfc C's request.

When Pfc C was informed that the military police had arrived she became combative and violent and gave Coon a bloody nose as she swung her elbows around.  Lance Corporal Creaser saw Pfc C stumbling down the hall and restrained her until the corpsmen arrived.  The various witnesses testified that Pfc C looked "[j]ust like a rag doll," that she was drooling, mumbling, slurring words and obscenities, and not making any sense.  There was testimony that her eyes were slightly rolled back in her head, that her head was straight down and her hair was in her face, that she was bobbing her head, that she could not hold her head up or stand by herself, and that the corpsman could not "get a real good response" to his questions.

One corpsman testified that during the ambulance ride, Pfc C was not coherent.  When they stimulated her physically or verbally she would respond with a head turn or opening her eyes.  Her verbal responses were "just cursing" and her speech was "real slurred."  On cross-examination, however, the corpsman testified that he checked the box on a form turned over to the hospital indicating that she was "responsive."

The second corpsman testified that for the majority of the ride Pfc C was unresponsive and had vomit coming out of her mouth.  When they tried to wake up Pfc C using verbal stimuli

9

she did not usually respond. When they administered painful stimuli "she would just kind of slur out the cuss word and . . . then she'd just try and go back to sleep." She became more responsive at the hospital as medical personnel started treating her. At that time, Pfc C was cursing at everyone.

The emergency room doctor testified that Pfc C answered questions intermittently, telling the doctor "her name and that she probably knew where she was and the year that it probably was at that point." The doctor testified that he rated Pfc C at eleven on the Glasgow Coma Scale because she was not spontaneously opening her eyes and it would take painful stimuli to arouse her. The rating for a normal person is fifteen, while the rating for a typical drunk person is around thirteen.[5]

## 2. Trial Counsel's Closing Argument

During closing, trial counsel argued that Pfc C was incapable of consent. He recounted the trial testimony describing Pfc C's condition from the time she began drinking in the barracks room with Paige and Coon until she was being treated by the corpsmen outside the bathroom. Trial counsel characterized the moments immediately before and immediately after the rape as "crucial time periods." He emphasized that Richardson was an eyewitness to the rape itself.

---

[5] The Glasgow Coma Scale is a measurement that physicians use to reflect the mental status of a patient, based on such things as motor function, verbal communications and eye movement.

10

During his argument, trial counsel characterized facts and evidence related to Pfc C's appearance during these crucial time periods as "uncontradicted."  He stated:

> These are what the facts are that you have in front of you.  You don't have -- and I say these are uncontradicts [sic] facts.
>
> . . . They're uncontradicted because there's not someone else there saying that's not what was going on.  You don't have something confronting Lance Corporal Richardson and saying, uh-uh.  She wasn't in her rack, she was sitting up.  I walked by and I saw it, she was looking out the window, they were having a conversation, or they were dry humping even.
>
> There's is [sic] nothing like that.  You've got Richardson in the room arms are limp and lifeless, no movement of her hips, head, legs; and when the accused gets off of her, she remains exposed.  So there's really -- there's a few critical -- there's sort of three parts to this:  What was she like just before the rape?  What was she like during the rape?  What was she like immediately after the rape?
>
> . . . .
>
> Gentleman, Richardson was there, and the farther you get away from the time that he is humping her, the farther you get away from it, the more -- other stimuli you start to get and the weaker any sort of evidence from the Monday morning quarterback and say she wasn't alert.
>
> Uncontradicted evidence at the time of the rape. Uncontradicted evidence moments after the rape; and this isn't just Richardson, Coon is saying this too.

Trial counsel showed slides to the members, two of which used the concept of "uncontradicted evidence."  One read:

UNCRADICTED [sic] EVIDENCE AT THE TIME OF THE RAPE

- "EYES ROLLED IN BACK OF HER HEAD"

- NO REACTION AT ALL WHEN RICHARDSON WALKS IN OR ACCUSED DISMOUNTS
- "ARMS ARE LIMP, LIFELESS"
- "NO MOVEMENT OF HIPS, HEAD, LEGS"
- REMAINS EXPOSED
- "LIKE A RAG DOLL"

Another slide read:

UNCRADICTED [sic] EVIDENCE MOMENTS AFTER THE RAPE

- VICTIM REMAINS EXPOSED
- VICTIM REMAINS MOTIONLESS
- VICTIM NOT COMMUNICATING CLEARLY
- "LIKE A RAG DOLL"

During his argument in rebuttal, trial counsel maintained that there were three "centers of gravity" -- the time immediately before the rape as witnessed by Richardson and Coon, the rape, which was witnessed in part by Richardson, and the time immediately after the rape when Richardson and Coon both confirmed she was unresponsive. Trial counsel argued that in all three centers of gravity Pfc C was the same: "unresponsive, she's in her rack in the same position, she ain't moving. She's not communicating coherently. She doesn't know what is going on; . . . ."

Trial counsel also talked about how Richardson and Coon were the "last eyes" on Pfc C and "the evidence shows it wasn't long" until the rape. Trial counsel stated: "Her center of gravity is going to be the evidence in front of you and this is the evidence, uncontradicted evidence of what her state was like last eyes on just before the rape."

12

During rebuttal, trial counsel also addressed the mistake of fact defense argued by defense counsel. He stated:

> If the accused had a honest and mistaken belief that [Pfc C] consented to the act of sexual intercourse, he is not guilty of rape. If the belief was reasonable. So step one this guy has to honestly believe that -- he's got to honestly believe and assert that his mistake was honest.
>
> I'll leave that to you, gentlemen. My focus is going to be on the reasonableness of it. . . .

Defense counsel did not object to any of the comments made by trial counsel during his closing argument or to any of the slides. The military judge instructed the members: "The accused has an absolute right to remain silent. You will not draw any adverse inference to the accused from the fact that he did not testify as a witness. You must disregard the fact that the accused has not testified."

## DISCUSSION

The privilege against self-incrimination provides an accused servicemember with the right not to testify at his court-martial and precludes comment by trial counsel on his silence. U.S. Const. amend. V; Article 31(a), UCMJ; see Carter, 61 M.J. at 33. Nevertheless, it is permissible for trial counsel to comment on the defense's failure to refute government evidence or to support its own claims. See Carter, 61 M.J. at 33; cf. Rule for Court-Martial (R.C.M.) 919(b) ("Arguments may properly include reasonable comment on the evidence in the case,

including inferences to be drawn therefrom, in support of a party's theory of the case.").

As we have repeatedly recognized: "A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the [members] 'naturally and necessarily' would interpret the summation as comment on the failure of the accused to testify." Carter, 61 M.J. at 33 (quoting United States v. Coven, 662 F.2d 162, 171 (2d Cir. 1981) (quotation marks omitted)); see also United States v. Webb, 38 M.J. 62, 66 (C.M.A. 1993) (quoting same).[6] We examine a prosecutorial comment "within the context of the entire court-martial." United States v. Baer, 53 M.J. 235, 238 (C.A.A.F. 2000).

Paige contends that trial counsel's argument that there was uncontradicted evidence "at the time of the rape" and "moments after the rape" amounted to constitutional error. According to Paige, because Pfc C testified that she could not remember events immediately before, during, or after penetration, Paige was the only person who could testify as to

---

[6] The Discussion to R.C.M. 919 suggests a similar rule: "Trial counsel may not argue that the prosecution's evidence is unrebutted if the only rebuttal could come from the accused." Although the Discussion is non-binding, we have previously recognized that this statement reflects applicable judicial precedent. See Carter, 61 M.J. at 33 (citing Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app.21 at A21-66 (2002 ed.)).

14

Pfc C's physical and mental state just prior to and at the time of penetration and was also the only person who could contradict the testimony of Richardson, who saw Paige and Pfc C having sexual intercourse.  Paige also contends that trial counsel's argument that Paige has "got to honestly believe and assert that his mistake was honest" followed by the comment, "I'll leave that to you, gentlemen," is a clear reference to his failure to testify.

The Government responds that the entire court-martial was focused on Pfc C's demeanor, her level of intoxication, and whether she was coherent at the time of the rape.  The Government contends that this case involved a number of witnesses who observed Pfc C just before the rape and immediately after the rape, as well as an eyewitness to the rape itself.  According to the Government, when examined in the context of the entire court-martial, trial counsel's comments were directed at the competing evidence introduced by the parties and the defense's failure to support its own claims. They were fair comment on the strength of the Government's case and the failure of the defense to rebut the Government's evidence through its witnesses.

Whether trial counsel's comments improperly invoked Paige's constitutional right not to testify is a question of law that we review de novo.  See United States v. Moran, 65 M.J. 178, 181

United States v. Paige, No. 08-0805/MC

(C.A.A.F. 2007).  In this case, defense counsel did not object

to any of trial counsel's comments, so we review for plain

error.  See Carter, 61 M.J. at 33.  Paige meets the plain error

standard if he establishes that "'(1) an error was committed;

(2) the error was plain, or clear, or obvious; and (3) the error

resulted in material prejudice to substantial rights.'"  United

States v. Maynard, 66 M.J. 242, 244 (C.A.A.F. 2008) (quoting

United States v. Hardison, 64 M.J. 279, 281 (C.A.A.F. 2007)).

"Once [Paige] meets his burden of establishing plain error, the

burden shifts to the Government to convince us that this

constitutional error was harmless beyond a reasonable doubt."

Carter, 61 M.J. at 33 (citing United States v. Carpenter, 51

M.J. 393, 396 (C.A.A.F. 1999)).[7]

---

[7] As to the intersection of the plain error standard and the
constitutional test for prejudice, the dissent asserts that "the
majority incorrectly shifts the burden of persuasion from
Appellant to the Government."  United States v. Paige, ____ M.J.
____ (6) (Stucky, J., dissenting in part and concurring in the
result, joined in Part II by Ryan, J.).  The standard that we
apply here is the constitutional standard as it has been
articulated by this court in plain error cases since United
States v. Powell, 49 M.J. 460, 465 n.* (C.A.A.F. 1998).  See,
e.g., United States v. Harcrow, 66 M.J. 154, 160 (C.A.A.F.
2008); United States v. Brewer, 61 M.J. 425, 432 (C.A.A.F.
2005); United States v. Carpenter, 51 M.J. 393, 396 (C.A.A.F.
1999); cf. United States v. Davis, 64 M.J. 445, 449 (C.A.A.F.
2007) (noting that "Article 59(a) is applied through standards
of review and appellate burdens tailored to the issue on appeal"
and that "[i]f the error is of constitutional dimension . . . the
government must show that the error was harmless beyond a
reasonable doubt").  In this case, the granted issue does not
involve a challenge to the application of the constitutional
test for prejudice in the context of plain error review, nor
have the parties raised it in their briefs or argument before

16

In this case, there were numerous witnesses who testified as to Pfc C's condition while she was in the smoke pit before the intercourse and while she was in the hallway after the intercourse. Moreover, there were two witnesses who testified as to Pfc C's condition during what trial counsel characterized as the "crucial time periods" in the case -- immediately before and immediately after intercourse. One of these witnesses, Richardson, testified for the Government; the other, Coon, testified for the defense. Richardson was the only witness to testify about the act of intercourse itself and she was not present at its onset.

1. Whether the Defendant Alone Had the Information to Contradict the Government's Evidence

a) Time Period When Paige and Pfc C Were Alone in the Room

The record does not support Paige's assertion of error that trial counsel improperly argued that there was uncontradicted evidence "just prior to and at the instance of penetration." While Paige was the only person who could testify as to Pfc C's condition just prior to and at the instance of penetration, trial counsel's closing argument did not focus on the time period when Pfc C and Paige were alone. Trial counsel's comments were directed to the period of time when either Richardson or both Richardson and Coon were in the room. The

this court. As such, consideration of this issue is best left for another day.

17

Government did not put on any evidence describing Pfc C's condition at the point of penetration and none of trial counsel's references to uncontradicted evidence can be attributed to that moment in time.

b) Time Period When Richardson Was in the Room with Paige and Pfc C

Trial counsel did argue that Richardson's testimony as to what she observed after she returned to the room was uncontradicted, as did the slide entitled "UNCRADICTED [sic] EVIDENCE AT THE TIME OF THE RAPE." While Coon returned to the room minutes later, for that brief period of time when Richardson was alone with Paige and Pfc C, Paige was the only person who could have contradicted Richardson's testimony.[8] We

---

[8] The dissent criticizes the majority for "chopping the trial counsel's argument into three segments -- before, during, and after the rape -- and then analyzing them separately." Paige, ____ M.J. at ____ (7) (Stucky, J., dissenting in part and concurring in the result, joined in Part II by Ryan, J.). According to the dissent, this approach fails to view trial counsel's argument "'in its entire context.'" Id. (quoting Baer, 53 M.J. at 239). We agree that to analyze the alleged error, we must view trial counsel's remarks in the entire context of trial counsel's argument. Contrary to the dissent's position, however, that is precisely what we are doing. In this case, trial counsel's closing argument repeatedly focused on these "crucial time periods" and emphasized their separateness, as made clear, for example, by separate slides entitled "UNCRADICTED [sic] EVIDENCE AT THE TIME OF THE RAPE" and "UNCRADICTED [sic] EVIDENCE MOMENTS AFTER THE RAPE." See supra pp. 11-13. In the circumstances of this case, to consider whether trial counsel's use of the phrase "uncontradicted evidence" amounted to an improper comment on the fact that Paige exercised his Fifth Amendment right not to testify in the context of trial counsel's entire argument, we cannot ignore this aspect of trial counsel's presentation.

therefore conclude that as to this brief period of time, the "defendant alone has the information to contradict the government evidence referred to" and trial counsel's comments were in error.[9]  Carter, 61 M.J. at 33 (citation and quotation marks omitted).

While we determine that these references were error, we easily reach the conclusion that this error was not plain or obvious.  Richardson's testimony established that Pfc C did not respond when Richardson entered the room or when Paige "dismounted."  It also established that Pfc C's eyes were rolled back in her head, that she looked lifeless, that her whole body was limp, that she was not moving at all, and that she remained exposed on her rack.

The observations of Coon, a defense witness who returned to the room minutes later, corroborated almost all of Richardson's

---

[9] Pfc C testified that before waking up in the hospital after the incident, the last thing she remembers was playing a drinking game with Paige.  She specifically had no recollection of having sexual intercourse with Paige.  Under these circumstances, we conclude that the victim herself, who cannot remember the incident, cannot be considered a person who has "information to contradict the government evidence referred to."  Carter, 61 M.J. at 33 (citation and quotation marks omitted).  We recognize that her own testimony as to memory loss induced by alcohol consumption could potentially be seen as evidence that corroborates Richardson's description of her condition during this time period.  However, in this case, there was expert testimony that her memory loss is attributable to a "phenomena known as blackout" where a person is aware of what they are doing and alert at the time but then cannot remember their behavior or any of the activities they engaged in during that time period.

testimony as to this period of time immediately after the intercourse. Coon testified that Pfc C was lying in the same place as she had been when Coon left the room, she was not moving, she did not respond when Coon walked over to her, she was off in a daze, she was exposed and Coon tried to put her clothes back on, and when Coon took her to the bathroom she had to drag her across the floor. In comparing Richardson's testimony with Coon's, we note that the two witnesses made nearly all the same observations about Pfc C's unresponsive condition.

The primary exception is that since Richardson returned to the room minutes before Coon, Richardson's testimony also addressed Pfc C's condition at the point in time that Richardson entered the room and at the point in time that Paige "dismounted." However, even this testimony went to Pfc C's unresponsiveness, an issue on which the testimony of Richardson -- the Government witness -- and the testimony of Coon -- the defense witness -- were consistent, tending to justify trial counsel's characterization of such evidence as "uncontradicted." As trial counsel emphasized: "[T]his isn't just Richardson, Coon is saying this too." In these circumstances, while we conclude that trial counsel's references to uncontradicted evidence during this brief period of time constitute error, the error was not plain and obvious.

c)  Period of Time When Both Richardson and Coon Are in the Room

After intercourse occurred, Paige left the room shortly after Richardson returned and before Coon returned.  Paige could not testify as to the observations of either Richardson or Coon during the period of time when he was not in the room.  As such, this obviously is not a period of time where the "defendant alone has the information to contradict the government evidence referred to."  Carter, 61 M.J. at 33 (citation and quotation marks omitted).

2.  Whether the Members "Naturally and Necessarily" Would Interpret the Summation as a Comment on the Failure of the Accused to Testify

We are not persuaded that the members would "naturally and necessarily. . . interpret the summation as comment on the failure of the accused to testify."  Carter, 61 M.J. at 33 (citation and quotation marks omitted).  Trial counsel's closing argument addressed the evidence raised through direct and cross-examination of numerous Government and defense witnesses who provided extensive observations of Pfc C's condition as a sequence through time.  The testimony of the defense's own witnesses contributed to the development of the sequence, which extended beyond the "crucial time periods" immediately preceding and following the rape to the point where Pfc C was receiving medical attention at the barracks, in the ambulance, and at the hospital.  In emphasizing that the evidence at the time of the

rape and immediately after the rape was uncontradicted, trial counsel's summation stressed consistency between the observations of Richardson and Coon, contrasting it with the more varied nature of the testimony surrounding the witnesses' observations as the evening progressed.

3. Trial Counsel's Comment on the Mistake of Fact Defense

Mistake of fact as to consent is an affirmative defense that can be raised even in the absence of the defendant's testimony. See United States v. Sellers, 33 M.J. 364, 368 (C.M.A. 1991). In discussing the mistake of fact defense in this case, trial counsel argued that Paige has to "assert" that his mistake was honest and then commented, "I'll leave that to you, gentleman." Trial counsel's choice of words suggests that Paige had to testify to establish the defense, and we believe the members would naturally and necessarily interpret this aspect of trial counsel's summation as comment on Paige's failure to testify. As such, we determine that these remarks were plain and obvious error.

On the facts of this case, however, we conclude that this error was harmless beyond a reasonable doubt. In Moran, 65 M.J. at 186-87, we addressed the harmless beyond a reasonable doubt standard when the error involved, among other things, remarks that trial counsel made during closing argument pertaining to an accused's decision to exercise his Fifth Amendment rights. In

22

Moran, we recognized that whether the error is harmless beyond a reasonable doubt "will depend on whether there is a reasonable possibility that the evidence [or error] complained of might have contributed to the conviction." Id. at 187 (citation and quotation marks omitted, brackets in original). We recognized further:

> "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous." It is, rather, "to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record."

Id. (quoting Yates v. Evatt, 500 U.S. 391, 403 (1991), overruled on other grounds by Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991)).

The evidence, much of which is recounted in detail above, strongly supports that Pfc C was incapable of consenting to sexual intercourse. Moreover, the extensive and consistent testimony addressing Pfc C's condition immediately before the intercourse, strongly supports that the defense of mistake of fact as to consent did not exist in this case.[10] Also, Lance Corporal Hobbs testified that he talked to Paige at the smoke

---

[10] At the time of Paige's trial, the Government had the burden to prove beyond a reasonable doubt that the affirmative defense did not exist. See R.C.M. 916(b) (2000), amended by R.C.M. 916(b) (2008). This case does not implicate the recent change to this rule, which places the initial burden upon the accused to prove mistake of fact as to consent in a rape case by a preponderance of the evidence. See R.C.M. 916(b)(4) (2008).

pit before the sexual intercourse occurred, and in reference to Pfc C, Paige stated that he "was going to try and hit that shit." Further, the military judge instructed the members: "The accused has an absolute right to remain silent. You will not draw any adverse inference to the accused from the fact that he did not testify as a witness. You must disregard the fact that the accused has not testified." This generalized instruction may not always be enough to overcome harm that arises when trial counsel improperly comments on the fact that an accused did not testify. See Carter, 61 M.J. at 35. However, considering this instruction together with the strength of the evidence tending to establish that the defense of mistake of fact as to consent did not exist in this case, we have no difficulty in reaching the conclusion that trial counsel's remark was unimportant in relation to everything else the members considered.

CONCLUSION

The testimony of Richardson, a Government witness, included observations of Pfc C's condition that addressed the brief period of time in which she was alone in the barracks room with Pfc C and Paige. Because Pfc C testified that she could not remember this period of time, Paige was the only person with information that could have contradicted Richardson's observations. By characterizing that portion of Richardson's

24

testimony as uncontradicted, trial counsel infringed on Paige's Fifth Amendment right to not testify.  In the context of this case, however, which included overlapping and consistent observations by a defense witness, we conclude that the error was neither plain nor obvious.

We further conclude that when addressing the defense of mistake of fact as to consent during closing argument, trial counsel infringed on Paige's Fifth Amendment right not to testify by arguing that Paige had to "assert" that his mistake was honest.  While we find this constitutes plain and obvious error, we conclude that in the context of this case, it was harmless beyond a reasonable doubt.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

25

STUCKY, Judge, with whom RYAN, Judge, joins in Part II (dissenting in part and concurring in the result):

I agree with the majority in affirming the decision of the Court of Criminal Appeals, but I respectfully dissent from its analysis of the plain error doctrine and from its conclusion that trial counsel's argument was error.

## I.  Plain Error

The plain error doctrine grants "authority for an appellate court to reverse on the basis of error even though that error was not properly raised and preserved at the trial level." Wayne R. LaFave et al., Criminal Procedure § 27.5(d), at 87-88 (3d ed. 2007).  "[R]ecourse" to the plain error doctrine may be had

> only on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.  The [doctrine] thus reflects a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.

United States v. Frady, 456 U.S. 152, 163 (1982).

To establish plain error under military law, an appellant has the burden of demonstrating that (1) there is error, (2) the error is clear or obvious, and (3) the error materially prejudiced a substantial right of the accused.  United States v.

Maynard, 66 M.J. 242, 244 (C.A.A.F. 2008) (citing United States v. Hardison, 64 M.J. 279, 281 (C.A.A.F. 2007)).

The plain error doctrine "'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United States v. Fisher, 21 M.J. 327, 328-29 (C.M.A. 1986) (quoting Frady, 456 U.S. at 163 n.14); accord United States v. Ruiz, 54 M.J. 138, 143 (C.A.A.F. 2000). When an appellant establishes the three-part plain error test, an appellate court such as ours has discretion to grant relief if it determines that the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 736 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)); United States v. Powell, 49 M.J. 460, 465 (C.A.A.F. 1998). Further, the Supreme Court has suggested that courts can deny relief in a case in which the alleged error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings without deciding that an appellant's substantial rights were prejudiced by the alleged error. See United States v. Cotton, 535 U.S. 625, 632-33 (2002); Johnson v. United States, 520 U.S. 461, 470 (1997).

The majority asserts that once an appellant has established plain, constitutional error, "the burden shifts to the Government" to establish that the error was harmless beyond a

reasonable doubt.  United States v. Paige, __ M.J. __ (16) (C.A.A.F. 2009) (citing United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005)).  But that language from Carter was derived from dictum in Powell, 49 M.J. at 464-65, that was based on United States v. Adams, 44 M.J. 251, 252 (1996), a case in which neither the issue granted for review nor this Court's opinion discussed plain error.[1]

The third prong of the military plain error test is derived from Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2000).  See Powell, 49 M.J. at 465.  It requires an appellant to establish that "the error materially prejudice[d] the substantial rights of the accused."  Article 59(a), UCMJ (emphasis added).  The term "materially," as used in Article 59(a), UCMJ, is best defined as "significantly."  See Bryan A. Garner, A Dictionary of Modern Legal Usage 551 (2d ed. 1995).

The federal plain error rule is similar.  The appellant must establish that the error "affect[s] substantial rights," Olano, 507 U.S. at 734 (quoting Fed. R. Crim. P. 52(b)), which, unless the error is structural, requires a showing of

---

[1] This Court reached a similar conclusion in United States v. Moran, 65 M.J. 178, 185 (C.A.A.F. 2007), by citing to United States v. Alameda, 57 M.J. 190, 198 (C.A.A.F. 2002), a case in which the defense clearly preserved the error by objecting at trial to the trial counsel's closing argument.

3

"prejudicial effect on the outcome of a judicial proceeding." United States v. Dominguez Benitez, 542 U.S. 74, 81 (2004). To demonstrate this prejudicial effect, the appellant must demonstrate "'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" Id. at 81-82 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)).

The language used in the third prong of the military and federal plain error doctrines differ, but they arrive at the same relative definition of prejudice. While prejudice under the federal rule requires the appellant to show a "prejudicial effect on the outcome of a judicial proceeding," id. at 81, the military rule defines prejudice under the third prong to require the appellant to show the error "'had an unfair prejudicial impact on the jury's deliberations.'" Fisher, 21 M.J. at 328 (quoting United States v. Young, 470 U.S. 1, 16 n.14 (1985)). Based on these similarities, I would adopt the Supreme Court's holding in Dominguez Benitez to military jurisprudence. An appellant satisfies the prejudice prong of the plain error test by demonstrating "'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" 542 U.S. at 81-82 (citation omitted).

Although the Supreme Court has not spoken directly on this issue, it has suggested that the plain error test need not be

changed to accommodate non-structural, constitutional errors.

See Johnson, 520 U.S. at 463 (trial judge failed to instruct the

jury on materiality, an essential element of the perjury offense

of which the appellant was convicted).  If the error alleged is

constitutional, the standard is the same; it just becomes easier

for the appellant to meet his burden of showing "a reasonable

probability that, but for the error, the result of the

proceeding would have been different."  See Dominguez Benitez,

542 U.S. 81-82 n.7 (citation and quotation marks omitted).

In a plain error case, as opposed to one in which the error

is preserved, the burden of persuasion never shifts to the

government;[2] it remains with the appellant, although the

government has the opportunity to argue why the error is not

prejudicial.  When a military appellant meets the heavy burden

of establishing "material" (significant) prejudice -- a

reasonable probability that, but for the error the result would

have been different -- it is impossible for the government to

show the error was harmless beyond a reasonable doubt.  By

conflating the third prong of the plain error standard with the

harmless beyond a reasonable doubt test for constitutional

---

[2] Dominguez Benitez, 542 U.S. at 82; Olano, 507 U.S. at 734-35
(noting that, in a plain error case, the normal burden on the
government to show an error is harmless shifts to the appellant
to show prejudice).

error, the majority incorrectly shifts the burden of persuasion

from Appellant to the Government.

## II.   The Alleged Errors

On appeal of his conviction for rape, Appellant contends

that the trial counsel committed plain error by arguing that (1)

the evidence was uncontradicted, and (2) to establish the

defense of mistake of fact as to consent, Appellant had to

assert that his mistake was honest.

> It is well established that the government may
> comment on the failure of a defendant to refute
> government evidence or to support his own claims.  "A
> constitutional violation occurs only if either the
> defendant alone has the information to contradict the
> government evidence referred to or the jury 'naturally
> and necessarily' would interpret the summation as
> comment on the failure of the accused to testify."

Carter, 61 M.J. at 33 (quoting United States v. Coven, 662 F.2d

162, 171 (2d Cir. 1981)).

This is not a case in which an appellant presented no

evidence at trial.  In an effort to contradict the Government's

case and establish that PFC C may have been conscious, the

defense counsel vigorously cross-examined Government witnesses

and presented several witnesses of their own, including Lance

Corporal Coon, one of Private First Class (PFC) C's roommates,

who had observed PFC C before and after the alleged rape.

Furthermore, it appears that this trial strategy of contesting

the credibility of the prosecution's witnesses may have had some

effect on the members; after rebuttal, the members recalled the prosecution's two main witnesses for further questioning.

### A.  Uncontradicted Evidence

Before closing arguments, the military judge instructed the members that they had "the duty to determine the believability of the witness."  In making such determinations, the members were to "[c]onsider also the extent to which each witness is either supported or contradicted by other evidence in the case."

The majority finds error in the trial counsel's argument, that certain evidence was uncontradicted, by chopping the trial counsel's argument into three segments -- before, during, and after the rape -- and then analyzing them separately.  But "the touchstone of whether an argument is improper is . . . the argument itself viewed in its entire context."  United States v. Baer, 53 M.J. 235, 239 (C.A.A.F. 2000).

The defense turned the trial into a referendum on the credibility of the Government's witnesses by showing inconsistencies in their statements.  Facing such a defense trial strategy, it was appropriate for the trial counsel to forcefully assert, in accord with the military judge's instruction on witness credibility, that on the important facts establishing the elements of the offense, the Government's witnesses were uncontradicted.  When "viewed in its entire context," the argument was not error.

7

## B. Mistake of Fact

Before closing argument, the military judge informed the members that the evidence had raised the issue of mistake on the part of Appellant as to whether PFC C had consented to sexual intercourse and that the Government had the burden of proving beyond a reasonable doubt that such was not the case. In his closing argument, the defense counsel argued that the members should acquit because it was reasonable under the circumstances for Appellant to believe that PFC C had consented. He neither argued that Appellant honestly believed PFC C consented to sexual intercourse nor pointed to any evidence from which the court members could infer that he did. Appellant now objects to the following statement from trial counsel's rebuttal argument:

> If the accused had a [sic] honest and mistaken belief that [PFC C] consented to the act of sexual intercourse, he is not guilty of rape. If the belief was reasonable. So step one this guy has to honestly believe that -- he's got to honestly believe and assert that his mistake was honest.

While the trial counsel's argument could have been more artfully drawn, it did not amount to error, let alone plain error. The government is permitted to comment on the failure of an accused to support his own claims. Carter, 61 M.J. at 33 (quoting Coven). The trial counsel was merely responding to defense counsel's closing argument that asserted Appellant may have been operating under a mistake of fact as to consent

because, under the circumstances, a reasonable man would have done so.  Trial counsel had a right to remind the members that the mistake of fact defense requires a subjective, as well as objective, belief that PFC C consented to the sexual intercourse, and that Appellant had neither pointed to any evidence nor asserted that such was the case.  The trial counsel's argument was not error.