# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

### No. 201500364

———————————————

### UNITED STATES OF AMERICA
Appellee

v.

### DEREK B. HAHN
Hospital Corpsman Third Class (E-4), U.S. Navy
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Robert P. Monahan, Jr., JAGC, USN.
Convening Authority: Commandant, Naval District Washington,
Washington Navy Yard, Washington, D.C.
Staff Judge Advocate's Recommendation: Commander James L.
Link, JAGC, USN.
For Appellant: Major Benjamin A. Robles, USMC.
For Appellee: Lieutenant Commander Jeremy R. Brooks, JAGC,
USN; Lieutenant James M. Belforti, JAGC, USN.

———————————————

Decided 28 March 2017

———————————————

Before GLASER-ALLEN, MARKS, and JONES, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

JONES, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 920.[1] The panel sentenced the appellant to six months' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority (CA) approved the adjudged sentence.

The appellant asserts two assignments of error (AOEs): (1) the military judge erred when he instructed the members that "[i]f, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of the crime charged, you must find him guilty;"[2] and (2) his conviction for the offense of sexual assault was factually insufficient. The first AOE has been recently resolved by our superior court against the appellant.[3] We disagree with the second AOE and, finding no error materially prejudicial to the substantial rights of the appellant, affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

Although not raised as an AOE, we note that the CA's promulgating order inaccurately reflects the findings, and we order corrective action in our decretal paragraph.

## I. BACKGROUND

The appellant and Lance Corporal (LCpl) ASC met on or about 22 November 2013 at the Ocean Breeze enlisted club (Ocean Breeze), on Camp Foster, Okinawa, Japan. Over the next month, they exchanged texts, worked out at the gym together, and spent time with each other outside of work hours, including attending the Navy Ball together. In the texts, LCpl ASC referred to the appellant as "hon," "sweetie," "babe,"[4] and "mi novio"[5] (Spanish for "my boyfriend"), and they told each other that they loved each other.

LCpl ASC had reported being held down by her wrists and raped nine months earlier, when she was on leave after completing boot camp. On 5

---

[1] The appellant was found not guilty of aggravated sexual assault and abusive sexual contact, both in violation of Article 120, UCMJ, 10 U.S.C. § 920. The former acquittal resulted from the military judge granting a motion under RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (MCM) (2012 ed.), and the latter was a verdict from the members. Record at 902-03, 1211.

[2] *Id*. at 1101.

[3] The Court of Appeals for the Armed Forces found no error in the use of the same challenged instruction in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), and in accordance with that holding, we summarily reject the appellant's AOE here. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

[4] Record at 802.

[5] *Id*. at 795.

December 2013, LCpl ASC texted the appellant that "sex freaks me out more often than not. like [sic] being on a bed and having sex with space around me….it's freaky to think about."[6] Two days later, on 7 December 2013, the two rented a room at the WestPac Inn (WestPac), a hotel on base. While there, LCpl ASC "freaked out,"[7] and left the WestPac sometime before 0200.

On the evening of 20 December 2013, shortly before the appellant was to execute permanent change of station orders, he again rented a room for the two of them. After eating dinner with the appellant in the WestPac room, LCpl ASC tried, unsuccessfully, to play a movie on the television. She then sat on the edge of the bed. At this point, the appellant began kissing LCpl ASC and trying to get her to move further back on the bed. According to LCpl ASC's testimony, she resisted his advances, but he continued until he had vaginal intercourse with her and attempted to perform oral sex on her. LCpl ASC claimed that, at some point, she was able to persuade the appellant to stop and go to the bathroom, and while he did so, she got dressed and left the room.

LCpl ASC then went directly to the Ocean Breeze, where she knew her friends would be. She tried to compose herself and told her friend, LCpl D, without identifying the appellant, that someone "kept making sexual advances towards her and she kept denying it, kept saying 'no.'"[8]

The appellant went to LCpl ASC's barracks room; not finding her there, he went to the Ocean Breeze to look for her. LCpl ASC tried to avoid the appellant by hiding in the bathroom. Eventually, after intervention from LCpl ASC's friends, the appellant left the Ocean Breeze. LCpl ASC then sent the appellant a text message stating, "When I say, no sex, it means no sex, not fucking try[ing] to seduce me and have your dick with no condom in my vagina. Nuff [sic] said. You found my ultimate bad memory trigger, so I'm going to drink to try to forget. Duces [sic]."[9] LCpl ASC then blocked the appellant on social media, deleted his number from her phone, and had no more contact with him. At the urging of a counselor, she reported the incident to Naval Criminal Investigative Service on 14 April 2014.

---

[6] Prosecution Exhibit (PE) 1 at 11.

[7] Record at 761.

[8] *Id*. at 601.

[9] PE 1 at 39; Record at 640.

## II. DISCUSSION

### A. Factual sufficiency

The appellant challenges the factual sufficiency of his conviction, asserting that: (1) "[L]Cpl ASC's testimony . . . rests on her dubious perception, memory, and truthfulness"[10] and (2) he "behaved as if he reasonably believed [L]Cpl ASC consented to sex."[11] We review questions of factual sufficiency *de novo*. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) and Art. 66(c), UCMJ), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The appellant was convicted of sexual assault under Article 120(b)(1)(B), UCMJ. To sustain a conviction under this statute, we must find the prosecution proved: (1) the appellant committed a sexual act upon LCpl ASC, to wit: penetrating her vulva with his penis; (2) the appellant did so by causing bodily harm to LCpl ASC; and (3) the appellant did so without the consent of LCpl ASC. Arts. 120(b)(1)(B) and 120(g)(3), UCMJ.[12]

### 1. Credibility of LCpl ASC

At trial the defense counsel conducted a vigorous cross-examination of LCpl ASC, lasting nearly six hours and comprising over 230 pages of transcript. The thrust of the cross-examination was that LCpl ASC was downplaying the seriousness of her relationship with the appellant, was worried about how she might be viewed by others, had made inconsistent statements, and that her memory could not be trusted. Despite these attacks, on balance, we find her testimony credible.

---

[10] Appellant's Brief of 4 May 2016 at 13.

[11] *Id.*

[12] Military Judges' Benchbook, Department of the Army Pamphlet 27-9 at 3-45-14 (10 Sep 2014).

It is true that LCpl ASC tried to downplay the seriousness of her relationship with the appellant at trial. She insisted that she had considered the two of them gym buddies and friends, and fought the trial defense counsel at every turn regarding how serious the relationship had been. Ultimately, however, when pressed by the defense, she admitted she had a "romantic attraction"[13] to the appellant. However, regardless of how serious the relationship was, on 20 December 2013, mere hours before the incident, LCpl ASC texted the appellant, "P.S. I am *still* not having sex with you tonight. i'm [sic] really really tired. I just want dinner and a movie and cuddle time."[14] The appellant responded, by acknowledging, "Baby, I already told you whatever you want to do is fine. If you change your mind that's be [sic] fine too. I just want to be with you."[15]

LCpl ASC's lack of any motive to fabricate a false allegation against the appellant is strong evidence. She admitted that she did not want to be seen as promiscuous and labeled a "slut"[16] by others. But she had no reason to fear those consequences in this instance, because she had never told her friends or coworkers about her relationship with the appellant. Further, she told her roommates she was going out with friends vice the appellant that night. To LCpl ASC's knowledge, no one knew she was at the WestPac with the appellant on 20 December 2013, thus obviating the need to manufacture a story of sexual assault to avoid being labeled promiscuous (as the defense asserted).

The defense was able to show minor inconsistencies in LCpl ASC's testimony, as they went through every configuration of her position on the bed that night and statements she had made to law enforcement, at a prior hearing, and to her friends at the Ocean Breeze. Her memory was not always clear, and there were certainly inconsistencies in her testimony. However, the inconsistencies were not so fatal as to cast substantial doubt on LCpl ASC's testimony that a sexual assault occurred. Proof beyond a reasonable doubt "does not mean the evidence must be free from conflict." *United States v. Reed*, 51 M.J. 559, 562 (N-M. Ct. Crim. App. 1999) (citation and internal quotation marks omitted). LCpl ASC's testimony that she verbally and physically resisted the appellant is strongly supported by her two bookend text messages. Earlier that day she had clearly told him that she was not having sex with him. Then, her angry text after the incident—"When I say,

---

[13] Record at 674.

[14] PE 1 at 38 (emphasis added); Record at 627.

[15] PE 1 at 38.

[16] *Id.* at 11.

no sex, it means no sex. Not . . . have [sic] your dick with no condom in my vagina"[17]—demonstrates that this warning was not heeded and she did not ever change her mind, as the appellant had hoped.

Further, LCpl ASC's actions and demeanor after the incident were consistent with someone who had just experienced a traumatic event. She fled the room at the WestPac and went immediately to the safety of her friends at the Ocean Breeze. In spite of LCpl ASC's attempts to compose herself, LCpl D described her as "very disheveled, very panicky"[18] and "very jittery, very nervous, very scared."[19] She was crying and shaking as she identified the appellant as the reason she was in such an emotional state. LCpl D testified that LCpl ASC kept nervously looking over her shoulder as she discussed what occurred. Even when LCpl ASC returned to her barracks room later that night, she was still "very upset"[20] and crying.

At trial, the defense called an expert in forensic psychiatry, who provided hypothetical explanations for LCpl ASC's behavior. She educated the members regarding tonic immobility[21] and dissociation.[22] However, the expert conceded that her opinions regarding how any of these areas might specifically impact LCpl ASC were speculative because she had not examined LCpl ASC or her medical records.

*2. Mistake of fact*

The appellant raises the affirmative defense of mistake of fact as to consent. The defense of mistake of fact is applicable if:

> [T]he [appellant] held, as a result of ignorance or mistake, an incorrect belief that the other person engaging in the sexual conduct consented. The ignorance or mistake must have existed in the mind of the [appellant] and must have been reasonable under all the circumstances. To be reasonable the ignorance or

---

[17] Record at 640, PE 1 at 39.

[18] *Id*. at 598.

[19] *Id*. at 602.

[20] *Id*. at 549.

[21] The expert defined "tonic immobility" as "the extreme manifestation of what we call the stress reaction. . . .where an individual would have the sensation that they were unable to move." *Id*. at 1027-28.

[22] "Dissociation" was defined by the expert as "the psychological version of tonic immobility, in which the individual doesn't feel as though they're really there in the moment and as a result, don't [sic] necessarily remember what's going on." *Id*. at 1030.

mistake must have been based on information, or lack of it, which would indicate to a reasonable person that the other person consented. Additionally, the ignorance or mistake cannot be based on the negligent failure to discover the true facts."[23]

"[T]he [appellant] has the burden of proving mistake of fact as to consent by a preponderance of the evidence. After the defense meets its burden, the prosecution shall have the burden of proving beyond a reasonable doubt that the defense did not exist." R.C.M. 916(b)(4). The appellant presented sufficient evidence to warrant the mistake of fact instruction by the military judge. However, the government rebutted it beyond a reasonable doubt.

There are certainly facts supporting the mistake of fact defense for the appellant. In the month proceeding 20 December 2013, the appellant and LCpl ASC saw each other nearly every day, exchanged text messages, and even shared that they loved each other. They had kissed, cuddled, held hands, and even talked about sleeping together. LCpl ASC had also agreed to spend the evening with the appellant at the WestPac the night of the incident.

However, there is ample evidence to contradict this defense beyond a reasonable doubt. As mentioned above, on 5 December 2013, LCpl ASC texted the appellant, informing him that she was a trauma survivor and that "sex freaks [her] out . . . it's freaky to think about."[24] Then, mere hours before the incident, she texted him, "P.S. I am still not having sex with you tonight."[25] The appellant responded back to her that he understood the ground rules.[26] On 20 December 2013, in spite of their particularly affectionate friendship, it was not reasonable for the appellant to believe LCpl ASC consented to sex that night. Her texts and behavior during, and after, the incident show that she never did change her mind that evening. The appellant's mistake of fact as to consent was neither reasonable nor honest; he ignored every reasonable "stop" sign LCpl ASC put up.

---

[23] R.C.M. 916(j)(3), MCM (2012 ed.). *See United States v. Paige*, 67 M.J. 442, 455 (C.A.A.F. 2009) ("[T]he mistake of fact defense requires a subjective, as well as objective, belief that [the victim] consented to the sexual intercourse . . . ."). Sexual assault, under Article 120(b)(1)(B), UCMJ, is a general intent crime, requiring that a "mistake as to consent be both honest *and* reasonable." *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998) (emphasis in original) (quoting *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995)).

[24] PE 1 at 11.

[25] *Id.* at 38; Record at 627.

[26] PE 1 at 38.

The appellant also avers that his actions after the incident show that he was a spurned lover rather than someone who had just committed sexual assault. But his actions are just as likely to be those of someone who had committed sexual assault, and was doing everything in his power to find his victim, and to convince her to keep what happened between them and not report him. Given the appellant's acknowledgment of her ground rules regarding no sex that night, his alleged bewilderment at her reaction is unfounded.

After carefully reviewing the record of trial, and making allowances for not having personally observed the witnesses, we are convinced beyond reasonable doubt of the appellant's guilt.

## B. Error in promulgating order

The CA's promulgating order erroneously reflects that Additional Charge I, Specification 1 was "Dismissed/Withdrawn."[27] In fact, the members found the appellant not guilty of this offense.[28]

The appellant is entitled to accurate court-martial records. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998) (citation omitted). Accordingly, we order the necessary corrective action in our decretal paragraph.

### III. CONCLUSION

The supplemental promulgating order shall correctly reflect the panel's finding of not guilty to the Additional Charge, Specification 2. The findings and the sentence as approved by the CA are affirmed.

Chief Judge GLASER-ALLEN and Senior Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[27] Convening Authority's Action of 2 Nov 2015.

[28] Record at 1211.

8