Chief Judge GIERKE
delivered the opinion of the Court.

INTRODUCTION

This case presents two issues. We granted review of one issue assigned by Appellant and specified a second issue.[1]
The assigned issue asks us to determine whether trial counsel’s closing argument included an improper comment on Appellant’s invocation of his Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831[2] rights to terminate an interrogation and to seek the assistance of legal counsel. In the unique factual context of this case, even if we assume error in the trial counsel’s argument, we hold that any error was harmless beyond a reasonable doubt.
The specified issue requires this Court to address whether appellate defense counsel was ineffective in requesting multiple enlargements of time at the lower court — which ultimately resulted in over seven years of appellate delay. We address this issue in light of our recent holding in United States v. Moreno,[3] that further developed the cases identified in the specified issue, to determine if Appellant was prejudiced by any deficiency in appellate representation. Although we conclude that the extraordinary unexplained delay resulted in a due process violation, we also conclude that this error was harmless beyond a reasonable doubt. In light of this conclusion, we hold that any deficiency by appellate defense counsel at the lower court was not prejudicial, and therefore, Appellant was not denied effective assistance of counsel.
We now address these two issues in turn.
I. COMMENTARY ON APPELLANT’S ARTICLE 31, UCMJ, RIGHTS
A. BACKGROUND AND TRIAL DEVELOPMENTS
Appellant was suspected of drug misconduct. Master Sergeant (MSgt) Crecilius, a Criminal Investigation Division (CID) investigator, initially interviewed Appellant as to his alleged drug misconduct. At the outset of this interview, Appellant waived his Article 31, UCMJ, rights, agreed to talk to the investigator, and initially denied using marijuana. However, Appellant later invoked his Article 31, UCMJ, rights, requested an attorney, terminated the interview, and departed. Appellant returned to his barracks room.
About three hours later, Appellant on his own initiative went back to the CID. Staff Sergeant (SSgt) Deal, an investigator with the CID, began a second interrogation of Appellant. Appellant waived his Article 31, UCMJ, rights and confessed to wrongfully using marijuana on one occasion. Additional investigation developed evidence relating to several offenses, and later Appellant’s case was referred to a special court-martial.
A court-martial panel of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of marijuana use, one specification of distribution of marijuana, and one specification of making a false official statement.[4]
*103 As part of the trial on the merits before a court-martial panel, Appellant challenged the truthfulness of his confession to one wrongful use of marijuana offense. The defense proffered the theory that Appellant fabricated his confession to drug use because of a coercive interrogation and in order to avoid harsh punishment.® In his opening statement, the trial defense counsel stated to the panel:
Mr. Haney, incidentally, is going to testify. So at least you’ll know that. That is the defendant. The reason is you’re going to hear evidence from him as to the promises being made and the fact that, if you say a couple of things, don’t worry about it, everything will go away. You’re going to hear that he went to see the investigating officer twice; the first time he walked out because of these alleged promises, and then he came back because there was a promise that if he did not state his involvement he would be tossed in the brig, but if he did make a statement as to anything that was talked about here, don’t worry about it, nothing is going to happen____
The prosecution case included two pieces of evidence to prove the drug offenses: testimony concerning Appellant’s signed confession to one use of marijuana, and testimony from members of Appellant’s battalion corroborating Appellant’s alleged marijuana use and distribution.
The first prosecution witness, SSgt Deal, an investigator with CID, testified regarding Appellant’s confession to smoking marijuana on one occasion. SSgt Deal testified that he gained information that Appellant, as well as other members of Appellant’s battalion, were allegedly using drugs. Because of this information, SSgt Deal interrogated Appellant on June 20, 1996. SSgt Deal testified that he properly advised Appellant of his Article 31, UCMJ, rights and Appellant “waived his rights, and provided [the incriminating] statement.”
In cross-examination of the Government witnesses, the defense attempted to bolster the theory, presented in the defense’s opening statement, that Appellant’s confession to one incident of marijuana use was fabricated as a result of CID coercion. This fine of questioning related to alleged conditional promises of leniency that interrogators made to Appellant if he admitted to -wrongful drug use.
Later, during the defense’s case-in-ehief, trial defense counsel elicited from Appellant other circumstances regarding the interrogation of Appellant, in general, and Appellant’s prior invocation of his Article 31, UCMJ, rights, in particular. Appellant testified that MSgt Crecilius first attempted to interview him about his alleged wrongful drug use.[5]
[6] Appellant testified that MSgt Crecilius explained Appellant’s “five rights,” and asked Appellant if he “wish[ed] to talk.” According to Appellant, MSgt Crecilius then asked Appellant whether he was involved with smoking marijuana with members of his battalion. Appellant stated that he denied smoking marijuana at that point, and requested an attorney. Appellant stated that after he left the room, CID agents took his fingerprints and his photograph, and he returned to his barracks room. Appellant further testified that the investigator’s threat that he would be placed into confinement if he did not give them information induced him later to return to CID and falsely to confess to SSgt Deal.[7]
In his initial closing argument, trial counsel addressed, and attempted to rebut, the defense assertion that Appellant had been induced to make a false confession. Trial counsel argued:
*104 [Appellant] says he gave a statement to avoid confinement. Well, let’s look at that. I mean I think that’s an interesting statement. Let’s — this is an important analysis that I think needs to be considered. He gets his first rights warning from Master Sergeant Crecilius and he invokes his right, he says, I want to see an attorney. And he leaves the premises and what does he do? He doesn’t see an attorney, he goes to the barracks. What would most people do in that situation if an individual was truly innocent? Wouldn’t they go see a lawyer and get some sort of legal protection? Would they come back and admit to guilt without the benefit of legal advice? What is more reasonable is that if he knows he’s guilty, he understands that there may be witnesses out there who can prove he’s guilty, he has an incentive to come back and try to minimize things by being as cooperative as possible and hope that he gets some sort of leniency. If he was innocent, the government is arguing, he would have gone and seen a lawyer, and used that shield.
Emphasis added.
Defense counsel made no objection to these remarks. Moreover, trial defense counsel, in his closing argument repeated the false confession theory stating:
Then Deal says, well, we’re after big fish, this is just a slap on the wrist, there’s really nothing to worry about, kind of thing. And again, you heard the comments from him that I specifically read. Wouldn’t that push' — and this is what you have to examine. What does that mean in his mind? ... [a]nd here’s a man — a young man never been exposed to this kind of interrogation, so he goes back and thinks about it, well, if nothing is going to happen, I’ll give them what they want.
II. DISCUSSION
Referring to the adversarial trial setting, the Supreme Court has stated that “[i]t is important that both the defendant and prosecutor have the opportunity to meet fairly the evidence and arguments of one another.”[8] In both Robinson[9] and Lockett v. Ohio,[10] the Supreme Court reaffirmed “the principle that prosecutorial comment must be examined in context....”[11] In both these cases, the Supreme Court held that a prosecutor’s argument was not an impermissible comment regarding an accused Fifth Amendment rights in light of the defense trial tactics in the case.[12]
Consistent with this principle, this Court has also stated:
Trial counsel has the duty of prosecuting a case, and he is permitted to comment earnestly and forcefully on the evidence, as well as on any inferences which are supported reasonably by the testimony. He may strike hard blows, but they must be fair. If his closing argument has a tendency to be inflammatory, we must make certain it is based on matters found within the record. Otherwise it is improper. The issues, facts, and circumstances of the case are the governing factors as to what may be proper or improper. We, therefore, must evaluate the argument in the light of this record.[13]
Appellant asserts that the Government’s closing remarks amounted to using his invocation of Article 31, UCMJ, rights as substantive evidence against him, in violation of *105 Military Rule of Evidence (M.R.E.) 301(f)(3). M.R.E. 301(f)(3) provides: “The fact that the accused during official questioning and in exercise of rights under the Fifth Amendment to the Constitution of the United States or Article 31, remained silent, refused to answer a certain question, requested counsel, or requested that the questioning be terminated is inadmissible against the accused.”
M.R.E. 301(f)(3) reaffirms the long-standing general rule that trial counsel cannot make “capital of accused’s exercise of his Article 31 rights.”[14] In light of this prohibition, we consider Appellant’s assertion of improper trial counsel comment on his invocation of constitutional rights in the context of the trial developments in this case.[15]
We also note that there was no defense objection to trial counsel’s argument. This Court has stated regarding a trial counsel’s argument:
Failure to object to improper argument before the military judge begins to instruct the members on findings constitutes waiver. In the absence of an objection, we review for plain error. Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused.[16]
In the view of the Government, the defense’s theory that interrogating agents coerced Appellant to obtain his confession opened the door to the trial counsel’s fair argument rebutting this theory.[17] Arguably, this permissible argument would further suggest that Appellant may not have felt the degree of coercion that he claimed compelled him to sign a false confession. After all, the interrogating agents respected Appellant’s assertion of his right to consult with counsel and terminated the interview. However, it was Appellant’s choice not to see a lawyer.
The defense asserts that trial counsel went beyond fair rebuttal when he stated “[if] he was innocent, the government is arguing, he would have gone and seen a lawyer, and used that shield.” Arguably, this statement does not address and rebut the claim of false confession, but rather argues, as evidence of Appellant’s guilt, his invocation of his right to consult a lawyer and his failure to actually consult with a lawyer. Accordingly, Appellant asserts that it was not fair rebuttal for trial counsel to argue essentially that Appellant was guilty because he did not consult a lawyer.
We need not presently resolve this matter. It is sufficient to say that we do not condone the entire argument of the trial counsel in the unique facts of this case and caution counsel against making such an argument. However, even assuming, arguendo, that trial counsel’s closing argument did improperly comment on Appellant’s right to invoke his Article 31, UCMJ, rights and his constitutional right to consult with counsel, we conclude that any error was harmless beyond a reasonable doubt for two reasons.[18]
*106 First, the record establishes that Appellant raised the matter of Appellant’s invoking his Article 31, UCMJ, rights and constitutional right to counsel. During his testimony on direct examination, Appellant made the initial evidentiary disclosure that he exercised his Article 31, UCMJ, rights. The Government did not inject Appellant’s invocation of his rights into evidence. Rather, the matter was brought out by trial defense counsel to support the defense theory of the case that his admission to one incident of marijuana use was fabricated in response to false CID promises of leniency and coercion.
Second, in our view, the strength of the Government’s case did not hinge upon Appellant’s confession to one use of marijuana. Rather, the Government presented the members with detailed testimony from two witnesses corroborating Appellant’s criminal misconduct — one of whom testified to having used marijuana with Appellant, and another who placed Appellant at the scene of an alleged incident of drug use.
Accordingly, we conclude that any error in the closing argument was harmless beyond a reasonable doubt,[19] and we affirm the decision of the lower court finding no merit as to Issue I.
III. INEFFECTIVE ASSISTANCE OF COUNSEL
We next address the specified issue: whether counsel was ineffective in requesting multiple enlargements of time to submit Appellant’s case for review. Appellant argues that counsel’s repeated requests for enlargements of time deprived him of due process of law and amounted to ineffective assistance of counsel.[20]
A. LAW RELATING TO INEFFECTIVE ASSISTANCE OF COUNSEL
In United States v. Polk,[21] this Court applied Strickland v. Washington, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) using a three-pronged test to determine whether counsel has been ineffective: (1) “Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel’s actions in the defense of the case?”; (2) If the allegations are true, “did the level of advocacy ‘fall[ ] measurably below the performance ... [ordinarily expected] of fallible lawyers?”’; and (3) “If ineffective assistance of counsel is found to exist, ‘is ... there ... a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?’ ”
The claim of ineffective assistance in this case is rooted in the failure of appellate defense counsel to perform the specific duty of filing pleadings at the lower court in a timely manner. We will evaluate this claim as we do a claim of a failure of counsel to perform other duties such as to make a motion or to suppress evidence. Therefore, Appellant must show that there is a reasonable probability that he was prejudiced by this alleged deficiency of appellate counsel.[22]
Because the ultimate question of prejudice arising from the alleged ineffective assistance of counsel is closely tied in this case to the issue of appellate delay, we analyze the specified issue in light of our recent holding in Moreno.[23]
Appellant asserts that the seven years of appellate delay resulted directly from the deficient performance of appellate counsel. *107 Attributing the languishment of his case to inadequate staffing of appellate counsel, Appellant asserts that “the failures by the Government led to a system of appellate review that diminished rather than preserved Appellant’s rights.” We proceed to apply our recent holding in Moreno to evaluate whether there was a due process violation in this case and, if so, whether Appellant was prejudiced.
B. APPLICABILITY OF UNITED STATES V. MORENO
In Toohey v. United States,[24] this Court identified four factors in determining whether post-trial delay violates due process rights: “(1) length of the delay; (2) reasons for the delay; (3) appellant’s assertion of his right to a timely appeal; and (4) prejudice to the appellant.”[25] More recently in Moreno, this Court explained: “Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation.”[26]
1. Length of the delay
We note at the outset that this case presents a particularly egregious delay — 2,639 days. This translates to over seven years from sentencing to the Court of Criminal Appeals opinion.[27] In accordance with Moreno, we conclude this delay is facially unreasonable, and we proceed to perform a full due process analysis.[28]
2. Reasons for the delay
Here, we focus on the degree of the Government’s responsibility for the delay, as well as on any factors “attributable to an appellant.”[29] Appellate counsel assigned to Appellant’s case requested a total of twenty-three enlargements of time.[30] From the standpoint of Moreno, we do not weigh this factor against Appellant.[31]
Indeed, we have held that where “a lack of ‘institutional vigilance’ ” causes a case to languish on appeal, an appellant is “effectively denied ... his statutory right to the free and timely professional assistance of detailed military appellate defense counsel.”[32]
3. Assertion of the right to a timely review and appeal
We observe that Appellant did not assert his right to a timely review and appeal before this case arrived at this Court. However, the underlying ineffective assistance of counsel allegation relates to the appellate defense counsel improperly requesting an excessive number of enlargements at the lower court. In light of this action by Appellant’s appel *108 late defense counsel, we cannot fault Appellant for failing to assert his right to a timely review. Accordingly, we do not weigh this factor against Appellant.
4. Prejudice from the delay
A final factor is any prejudice either personally to the appellant or the presentation the appellant’s case that arises from the excessive post-trial delay.[33] We have determined that Appellant received only 107 days of adjudged confinement and has brought no claim of oppressive incarceration. Appellant was out on appellate leave during the delay period, and thus, has no meritorious claim of “particularized anxiety.”[34]
5. Conclusion — Barker factors
Under Moreno, we balance the factors to determine whether Appellant’s due process rights were violated. In this ease, we are concerned with two main factors. First, the length of the delay in this case is one of the longest we have seen- — seven years. Secondly, this inordinate delay is unexplained. Neither the appellate defense counsel’s repeated requests for extensions of time nor the mere circumstance of an extremely large caseload adequately explains this unreasonable delay.[35] Although we conclude Appellant suffered no prejudice under the factors set forth in Barker, we conclude the egregiousness of the unexplained delay in this case was such that the perception of fairness of the military justice system is potentially jeopardized.[36] Accordingly, we find a due process violation.[37]
6. Relief
Having found a due process violation, we now test for harm and prejudice.[38] Based on our analysis under Issue I, the present case does not involve either the denial of properly and timely relief on another meritorious issue or particularized anxiety or hardship that might arise from a rehearing. Moreover, based on our review of the entire record, we conclude that there is not any cognizable prejudice arising from the delay in this case.[39] Appellant served only 107 days of confinement and was likely released on appellate leave by the end of June 1997. We therefore conclude the delay in this ease was harmless beyond a reasonable doubt.[40] In light of this conclusion, we revisit the issue of ineffective assistance of counsel.
In order to prevail on the prejudice prong of an ineffective assistance of counsel claim, an appellant must ultimately show that “the deficient performance prejudiced the defense.”[41] Based on the analysis above, and guided by Moreno, we conclude that Appellant was not prejudiced by any deficiency in the appellate representation at the lower *109 court. Therefore, we hold that Appellant was not denied the effective assistance of counsel.[42]

DECISION

As to the assigned issue, the holding of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed. As to the specified issue, we answer the question in the negative. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. The granted issue is:
I. WHETHER TRIAL COUNSEL COMMITTED PLAIN ERROR BY IMPROPERLY COMMENTING ON APPELLANT’S EXERCISE OF ARTICLE 31 RIGHTS.
This Court specified the following issue:
II. IN LIGHT OF TOOHEY V. UNITED STATES, 60 M.J. 100 (C.A.A.F.2004) AND DIAZ V. JUDGE ADVOCATE GENERAL OF THE NAVY, 59 M.J. 34 (C.A.A.F.2003) WHETHER DEFENSE COUNSELS' MULTIPLE REQUESTS FOR EXTENSIONS OF TIME CONSTITUTE INEFFECTIVE ASSISTANCE OF COUNSEL.
United States v. Haney, 61 M.J. 19 (C.A.A.F.2005).

. 10 U.S.C. § 831 (2000).

. 63 M.J. 129 (C.A.A.F.2006).

. This was in violation of Articles 107 and 112a, UCMJ, 10 U.S.C. §§ 907, 912a (2000). Appellant was sentenced to 107 days confinement, forfeiture of $600 pay per month for six months, reduction to pay grade E-l, and a bad-conduct discharge. The convening authority approved the adjudged sentence. The United States Navy- *103 Marine Corps Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. Haney, No. NMCCA 9900878 (N.M.Ct.Crim.App.2004).

. At trial, defense counsel did not make a motion to suppress Appellant’s confession to SSgt Deal. The coerced confession theory was presented only to the panel during presentation of the case on the merits.

. MSgt Crecilius did not testify, but on cross-examination, SSgt Deal corroborated MSgt Crecilius's presence at an initial meeting prior to his meeting with Appellant.

. Appellant stated: "I didn’t want to end up in confinement so I thought, well, if I go back and tell them what they want to hear, I will not end up in confinement.”

. United States v. Robinson, 485 U.S. 25, 33, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).

. Id. at 33-34, 108 S.Ct. 864.

. 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

. Robinson, 485 U.S. at 33, 108 S.Ct. 864; Lockett, 438 U.S. at 595, 98 S.Ct. 2954. This Court also has emphasized the importance of context in evaluating a prosecutor’s argument stating the fundamental rule that "[a] prosecutorial comment must be examined in light of its context within the entire court-martial.” United States v. Carter, 61 M.J. 30, 33 (C.A.A.F.2005); see, e.g., United States v. Baer, 53 M.J. 235, 238 (C.A.A.F.2000).

. Robinson, 485 U.S. at 33-34, 108 S.Ct. 864; Lockett, 438 U.S. at 595, 98 S.Ct. 2954.

. United States v. Doctor, 7 C.M.A. 126, 133-34, 21 C.M.R. 252, 259-60 (1956) (citations omitted); see United States v. Ruiz, 54 M.J. 138, 143-44 (C.A.A.F.2000).

. See United States v. Kemp, 13 C.M.A. 89, 98, 32 C.M.R. 89, 98 (1962); see, e.g., Carter, 61 M.J. at 34 (holding that repeated references to "uncontroverted evidence” of an accused’s guilt throughout closing argument was reversible error, where the comments were general, and not “tailored to the defense credibility argument”); United States v. Gilley, 56 M.J. 113, 123 (C.A.A.F.2001) (holding that there was no material prejudice arising from trial counsel’s repeated references to an accused's invoking his right to counsel); Ruiz, 54 M.J. at 143 (holding that, where an accused took the stand to testify in his own defense and denied culpability for the crime of shoplifting, trial counsel’s commentary regarding this theory was made in furtherance of counsel’s “ ‘duty to ... point out the inconsistencies and’ unbelievable nature of appellant’s story”).

. See Carter, 61 M.J. at 33; Baer, 53 M.J. at 238 (stating that "the argument by a trial counsel must be viewed within the context of the entire court-martial. The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.’ ”) (citations omitted).

. United States v. Fletcher, 62 M.J. 175, 179 (C.A.A.F.2005) (citations omitted).

. See Carter, 61 M.J. at 33; see, e.g., Gilley, 56 M.J. at 120-21 (citing Robinson, 485 U.S. at 32, 108 S.Ct. 864).

. See, e.g., United States v. Young, 470 U.S. 1, 11-12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (stating that "[¡Inappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding”).

. See United States v. Carpenter, 51 M.J. 393, 396 (C.A.A.F.1999) (holding that, in light of the appellant’s failure to object to the prosecution’s rebuttal argument against him, any error in the prosecution’s argument was harmless).

. Appellant also alleged various claims of ethical violations based on conflicts of interest resulting from changes in attorneys assigned to his case. We find nothing in the record indicating an actual conflict of interest between attorneys assigned to his case which would have hindered the adequacy of representation. See Mickens v. Taylor, 535 U.S. 162, 175, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (citing Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

. 32 M.J. 150, 153 (C.M.A.1991).

. See United States v. McConnell, 55 M.J. 479, 481 (C.A.A.F.2001); United States v. Napoleon, 46 M.J. 279, 284 (C.A.A.F.1997).

. 63 M.J. at 141.

. 60 M.J. 100 (C.A.A.F.2004). In Toohey, this Court held that the appellant established a threshold showing of facially unreasonable delay, even without showing prejudice. Id. at 104. The Court remanded the case to the Navy-Marine Corps Court of Criminal Appeals for it to determine whether the lengthy delay violated the appellant’s Fifth Amendment right to due process and whether the delay warranted some form of relief. Id.

. Id. at 102 (deriving these factors from the Supreme Court’s speedy trial analysis in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

. 63 M.J. at 136.

. It is also noteworthy that it took 1,179 days (approximately three years, two months) for the briefs to be filed after the Court of Criminal Appeals docketed the case. After the case was submitted, it took over 654 days (approximately one year, nine months) to decide the case.

. Moreno, 63 M.J. at 136.

. Id.

. Appellate counsel was first assigned to Appellant’s case in June 1999. The first attorney assigned as appellate defense counsel requested a total of eighteen requests for enlargement of time. This attorney was transferred from the Appellate Defense Division. In August 2001 or thereabout, the next attorney took over Appellant’s case, and requested five enlargements of time. Thus, Appellant’s counsels requested a combined twenty-three enlargements of time pri- or to filing a brief.

. Id. at 137.

. See Article 70, UCMJ, 10 U.S.C. § 870 (2000); United States v. Dearing, 63 M.J. 478, 486 (C.A.A.F.2006) (holding that “[cjonsistent with our decisions in Diaz and Moreno, we decline to hold Appellant responsible for the lack of institutional vigilance’ which should have been exercised in this case”); see Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 39-40 (C.A.A.F.2003).

. Moreno, 63 M.J. at 138-39.

. Dearing, 63 M.J. at 485; Moreno, 63 M.J. at 140.

. The Government's motions to file the declarations of Commander S.D. Rhoades and Mr. Robert Troidl are granted, and we have considered the contents of those declarations.

. United States v. Toohey, 63 M.J. 353, 362 (C.A.A.F.2006) (holding that "where there is no finding of Barker prejudice, we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system”); United States v. Harvey, 64 M.J. 13, 24-25 (C.A.A.F.2006).

. Harvey, 64 M.J. at 24-25.

. Id.

. Cf. Dearing, 63 M.J. at 489 (concluding prejudice arose from counsel's inefficacy because appellant raised a meritorious claim on appeal, for which this Court granted relief).

. In United States v. Allison, 63 M.J. 365, 370 (C.A.A.F.2006), this Court acknowledged that "[a]s a general matter, we can dispose of an issue by assuming error and proceeding directly to the conclusion that any error was harmless.” We proceeded in Allison to assume a denial of a right to speedy review and concluded that the error was harmless. Id. at 371. In light of our conclusion of harmless error in the present case, we could have followed this approach. But the appellate delay here is the longest this Court has recently reviewed. The particularly egregious delay — 2,639 days — invites the detailed due process analysis we present in this opinion.

. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

. But see Dearing, 63 M.J. at 488.