**UNITED STATES**

v.

**Staff Sergeant Yolanda FLORES, United States Air Force.**

**ACM S31621.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 1 Dec. 2007.

19 Jan. 2010.

---

652

Appellate Counsel for the Appellant: Major Shannon A. Bennett, Major Michael A. Burnat, Captain Tiaundra D. Sorrell, and Captain Andrew J. Unsicker.

Appellate Counsel for the United States: Colonel Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, Major Steven R. Kaufman, and Gerald R. Bruce, Esquire.

Before BRAND, JACKSON, and THOMPSON, Appellate Military Judges.

OPINION OF THE COURT

THOMPSON, Judge:

The appellant was charged with four specifications of failure to obey a lawful order and two specifications of false official statement, in violation of Articles 92 and 107, UCMJ, 10 U.S.C. §§ 892, 907. She pled guilty to two specifications of failure to obey a lawful general order and not guilty to the remaining specifications. A military judge sitting as a special court-martial convicted her of all charges and specifications and sentenced her to a bad-conduct discharge, confinement for six months, and reduction to E–1.[1] The convening authority approved the sentence as adjudged.

The appellant asserts two errors: (1) her conviction of Specification 4 of Charge I is

1. The military judge found her guilty of Specification 4 of Charge I and Specification 1 of Charge II by exceptions and substitutions.

legally and factually insufficient because the government presented no evidence that the appellant created Prosecution Exhibit 8, the digital video, and relied upon facts not in evidence; and (2) during argument, the trial counsel improperly commented on the appellant's constitutional right to remain silent thus depriving her of a fair trial. Additionally, we note an error in post-trial processing in that the staff judge advocate recommendation (SJAR) incorrectly reported the maximum possible sentence in the case. We address this additional issue below. For the reasons set forth herein, this Court affirms the approved findings and sentence.

*Background*

The appellant was a security forces member deployed to Camp Bucca, Iraq, where she served as a detention facility guard. She was assigned duties as a quad shift leader (QSL) and was entrusted with up to 250 detainees held in her quad. As such, she was responsible for ensuring that the detainees in her quad were treated with dignity and respect and that the detainees received food, medical care, and other support. Her primary point of contact, or liaison, with the detainees was the quad chief, a detainee selected by his fellow detainees to serve as their spokesman. She was expected to develop a good rapport with the chief.

All personnel assigned to the Camp Bucca detention facility were required to comply with certain lawful orders regarding the performance of their duties. In particular, with respect to the case at hand, personnel were prohibited from photographing or video recording any detainee, from transferring to another any photographs or other media containing pictures of detainees, and from fraternizing with or acting with undue familiarity toward any detainee. The appellant blatantly violated each of these prohibited activities.

The appellant worked the midnight to noon duty shift. She developed an unprofessional relationship with a male Iraqi detainee who was the quad chief (hereinafter Detainee H).[2] Coworkers reported she spent an unusual amount of time talking and interacting with Detainee H. Airman First Class (A1C) B saw the appellant kiss Detainee H. As the QSL, the appellant was responsible for unlocking the detainee shower area for morning showers; however, she abused this authority. She began slipping the key to Detainee H so he could unlock the gate and wait for her in the shower area where they engaged in sex and other inappropriate behavior. On at least one occasion, A1C B served as lookout when the appellant met Detainee H in the shower area. As her tour of duty neared its conclusion, the appellant began taking her camera into the detention facility. She took photos of detainees and loaned her camera to Detainee H, who took photographs of fellow detainees and guards. On another occasion, the appellant used A1C B's camera to photograph and video record Detainee S. While recording their conversation, the appellant told Detainee S to tell A1C B that he loved her.[3] When the appellant returned the camera to A1C B, she told A1C B that she had a surprise for her on the camera. She and A1C B shared digital photographs of detainees with each other. When Detainee H's sleeping area was searched, the investigator found a civilian photograph of the appellant in his possession with an inscription on the back which had been marked out. The investigator also found a government-issued green ledger notebook with the name "Flores" and a heart drawn on the cover. The notebook was blank inside. The appellant's misconduct not only violated lawful orders and established procedures for dealing with detainees, but her activities also created a security risk to herself and fellow detention guards.

On 2 July 2007 and again on 11 July 2007, Air Force security forces investigators interviewed the appellant. Before each interview, the appellant was given a proper rights ad-

---

2. At the request of the trial defense counsel, the military judge made special findings pursuant to Rule for Courts–Martial 918(b). The military judge enumerated the conduct which he found to be fraternization or acting with undue familiarity toward a detainee.

3. Upon request of the defense, the military judge also made special findings regarding the fraternization or acting with undue familiarity toward a detainee regarding the video of Detainee S filmed by the appellant.

visement. Rather than exercising her right to remain silent, the appellant waived her rights and agreed to answer questions. When confronted by investigators, the appellant lied about her involvement and made admissions only after she was confronted by the evidence. At trial, Staff Sergeant (SSgt) KS, one of the investigators who participated in the interviews, testified "[i]t wasn't until we brought her back that her story was changing.... [W]e never had a set story from [the appellant]."

### Legal and Factual Sufficiency

We review each court-martial record de novo to determine its legal and factual sufficiency. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002). With regard to legal sufficiency, we ask "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all of the elements [of the offense proven] beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987). For factual sufficiency, we weigh the evidence in the record of trial and, after making allowances for not having personally observed the witnesses, determine whether we are convinced beyond a reasonable doubt of the appellant's guilt. *United States v. Sills*, 56 M.J. 239, 240–41 (C.A.A.F. 2002); *Turner*, 25 M.J. at 325.

We have considered the evidence produced at trial in a light most favorable to the government and find a reasonable factfinder could have found the appellant guilty of Specification 4 of Charge I, violation of a lawful order, beyond a reasonable doubt. Specifically, the record contains ample evidence regarding the appellant's creation of the digital video of Detainee S. We note the video was admitted into evidence with no objection by the defense. During the testimony of A1C B, she described her infatuation with Detainee S and how she had confided in the appellant about her feelings for Detainee S. A1C B told the military judge that when the appellant returned A1C B's camera, the appellant remarked she had a

surprise for A1C B on it—the video of Detainee S. Investigators seized one video of Detainee S from A1C B's computer. There were no other videos of Detainee S seized during the investigation. During the appellant's second interview by investigators, she admitted to making the video of Detainee S and confirmed it was her voice on the recording. In addition, the appellant signed a sworn statement admitting she made the video of Detainee S. During cross-examination, the investigator testified she viewed the video of Detainee S and recognized the appellant's voice as she spoke with Detainee S on the recording. She confirmed the appellant asked Detainee S to tell A1C B how much he loved her while filming the video.

The military judge made special findings that the appellant "engaged in a personal discussion with [Detainee S], specifically soliciting him to state that he loved [A1C B]. The [appellant] made this solicitation while she was recording this discussion with [Detainee S] via a digital video recording device she was operating."

Contrary to the assertions of the appellant, we find there is a plethora of evidence supporting the charge and specification at issue. Thus, after careful review of all the evidence, we are convinced beyond a reasonable doubt that the appellant is guilty of Specification 4 of Charge I.

### Argument of Trial Counsel

The appellant asserts the trial counsel made five inappropriate comments during argument which violate the appellant's constitutional right to remain silent. First, as the trial counsel argued how the testimony of A1C B regarding the video was corroborated, she stated: "Well that was corroborated by [the appellant]. She actually corroborated that in court, in front of you, Your Honor." [4] The trial defense counsel did not object. Next, the trial counsel argued the evidence before the court indicated the appellant was involved with more pictures than she had admitted. The trial counsel pointed out that it was A1C B who told the court about the circumstances surrounding some of the pic-

---

4. The trial counsel was referencing the appellant's statement during the guilty plea inquiry

that she had recorded the video of Detainee S.

tures, and remarked, "[t]hat [information] didn't come out of [the appellant's] mouth." The trial defense counsel objected, asserting the comment was an inappropriate comment on the appellant's right to remain silent. The military judge overruled the objection. Later during argument, the trial counsel stated, "you still don't have a set story from [the appellant]." The trial defense counsel objected, citing the Fifth Amendment.[5] The military judge overruled the objection. As she concluded her argument, the trial counsel stated: "And the government contends that [A1C B's] testimony is the one that's corroborated. . . . There's nothing that corroborates anything in terms of what [the appellant] has stated, when she had the opportunity to state things." There was no objection by the trial defense counsel. During rebuttal argument, the trial counsel asked the military judge "to go back and weigh heavily what testimony and evidence you have that supports [A1C B's] version of the facts and what you have that supports [the appellant's]." The trial defense counsel made no objection.

▆ Whether there has been improper reference to the appellant's invocation of her constitutional rights is a question of law that is reviewed de novo by this Court. *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007). The privilege against self-incrimination provides an accused service member with the right not to testify at her court-martial and precludes comment by the trial counsel on her silence. U.S. CONST. amend. V; Article 31(a), UCMJ, 10 U.S.C. § 831(a); *see also United States v. Paige*, 67 M.J. 442, 444 (C.A.A.F.2009). "Trial counsel are permitted to use a guilty plea to a lesser-included offense to establish elements common to both the greater and lesser crimes of a single specification. They may not, however, reach back to the providency inquiry to find evidence to condemn the accused from [her] own mouth on a separate offense."[6] *United States v. Craig*, 63 M.J. 611, 614 (A.F.Ct. Crim.App.2006) (case before members during

which the trial counsel played a tape of the *Care*[7] inquiry to prove *the* essential element required to find the accused guilty of a separate offense) (internal citations omitted).

▆ As our superior court held in *Paige*, it is nevertheless permissible for the trial counsel "to comment on the defense's failure to refute [the] government's evidence or to support its own claims." *Paige*, 67 M.J. at 448 (citing *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F.2005)); *Cf.* Rule for Court–Martial (R.C.M.) 919(b) ("Arguments may properly include reasonable comment on the evidence in the case, including inferences to be drawn therefrom, in support of a party's theory of the case."). "A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the members naturally and necessarily would interpret the summation as comment on the failure of the accused to testify." *Paige*, 67 M.J. at 448 (citing *Carter*, 61 M.J. at 33 (quoting *United States v. Coven*, 662 F.2d 162, 171 (2nd Cir. 1981))). We examine the trial counsel's argument "within the context of the entire court-martial." *Id.* (quoting *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F.2000)); *see also United States v. Haney*, 64 M.J. 101, 105 (C.A.A.F.2006) (noting the focus of an appellate court's inquiry should not be on words in isolation, but on the argument viewed in context of trial developments). "[A] military judge is presumed to know the law and apply it correctly absent clear evidence to the contrary." *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F.2008).

When there are no objections at trial to the trial counsel's argument, this Court reviews for plain error. *Paige*, 67 M.J. at 449. The plain error standard is met if the appellant establishes: "(1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights." *Id.* (quoting *United States v. Maynard*, 66 M.J. 242,

---

5. U.S. CONST. amend. V.

6. This case does not involve the issue of use of a lesser-included offense to prove the greater. This case involves *separate* offenses to which the appellant pled not guilty.

7. *United States v. Care*, 18 USCMA 535, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969).

244 (C.A.A.F.2008) (quoting *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F.2007))). Once the burden is met, the burden shifts to the government to convince us that the constitutional error was harmless beyond a reasonable doubt. *Id.* When the defense counsel objects to comments made by the trial counsel during argument, we first must determine whether the alleged error was of "constitutional magnitude" to properly assess the effect of those comments. *United States v. Alameda*, 57 M.J. 190, 199 (C.A.A.F.2002). If we find there was constitutional error, then "we must be satisfied beyond a reasonable doubt that the error was harmless." *Id.* at 199–200.

■ After reviewing the five allegedly inappropriate comments of the trial counsel, we hold only the first comment regarding the *Care* inquiry testimony rises to the level of error.[8] The trial counsel committed error when she relied upon a statement made by the appellant during the *Care* inquiry to corroborate the testimony of A1C B. The trial counsel was using this evidence to prove the separate offenses to which the appellant had pled not guilty. We note these were separate offenses, not lesser-included offenses. Thus, use of the *Care* inquiry in this manner was improper. However, we conclude there was no material prejudice to the appellant and the error was harmless beyond a reasonable doubt. Clearly, the record contains ample evidence proving the appellant created the video without needing to refer to a statement made by the appellant during the *Care* inquiry. In fact, to make the same point, the trial counsel could have argued the appellant's statement to the investigators that she had created the video corroborated the testimony of A1C B and there would be no issue.

■ Regarding the remaining four comments by the trial counsel alleged to be inappropriate commentary on the appellant's right to remain silent, we conclude the trial counsel did not err in making any of the four remaining comments. This was a fiercely litigated, multi-day trial in which the government called seven witnesses and produced sixteen items of evidence. The government's case was based in large part on the testimony of A1C B; however, her testimony alone was not the government's case. The investigators who worked the case and interviewed the appellant were called to testify. Another investigator discussed her search and interview of Detainee H. Coworkers and supervisors described the appellant's actions and discussed the procedures and requirements for working at the detention facility. Even defense witnesses provided testimony helpful to the government's case.

The appellant was interviewed twice by investigators. She initially lied about her involvement, blamed others, and made admissions only after being trapped by overwhelming evidence. One investigator testified there was no set story from the appellant. Therefore, the appellant's denials of her involvement were clearly before the court. The appellant's defense was that she did not fraternize with detainees as alleged. The trial defense counsel attacked the evidence and the credibility of the government witnesses. The defense also presented multiple witnesses and attempted to create reasonable doubt regarding the government's evidence. In fact, the defense presented a Stipulation of Expected Testimony of Detainee H. In that stipulation, Detainee H denied he and the appellant had sex and denied meeting any guard in the water closet, stating he would never do that.

The trial counsel's argument covered 21 pages in the record. The trial counsel properly commented on the defense's failure to refute the government's evidence and argued in support of its own claims. The trial counsel's argument was a reasonable comment on the evidence in the case and included inferences to be drawn therefrom. This is not a

8. The second comment—"[t]hat [information] didn't come out of [the appellant's] mouth"— initially gave this Court pause. However, it is important to consider the context in which the phrase was uttered. After carefully reviewing the entire sentencing argument by the trial counsel, we find the comment was not intended as an inappropriate reference to the appellant's right to remain silent. Rather, the remark was an artless comment made during the heat of argument both to disparage statements the appellant made during her interviews with investigators and to highlight the credibility of the prosecution witness, Airman First Class B.

case in which the appellant alone had information to contradict the government's evidence or one in which the military judge would interpret the summation as comment on the failure of the appellant to testify. Additionally, we note this was a military judge alone trial and presume the military judge knows and applies the law correctly absent clear evidence to the contrary. *Bridges,* 66 M.J. at 248. In this case, there was no such evidence.

After carefully reviewing the argument of the trial counsel, not in isolation but in the context of the entire argument and entire trial, we conclude the trial counsel's comments were not a violation of the appellant's constitutional right to remain silent. Rather, they were proper comment on the evidence. It is quite clear the trial counsel's comments refer to the two interviews of the appellant and to other evidence which corroborated the testimony of A1C B. The trial counsel's arguments were not references to the appellant's right to remain silent. Finally, even assuming, arguendo, any of the four remaining comments were inappropriate, we find the error to be harmless beyond a reasonable doubt. When viewing the 21–page argument in total, it is clear these comments are isolated, minor comments in the context of the entire argument. The government wove together an impressive array of persuasive evidence proving the appellant guilty of the offenses. An isolated comment would not have impacted the military judge as he considered the appellant's guilt or innocence. Thus, the appellant's allegation of error fails.

### Post–Trial Processing

■ We review post-trial processing issues de novo. *United States v. Sheffield,* 60 M.J. 591, 593 (A.F.Ct.Crim.App.2004) (citing *United States v. Kho,* 54 M.J. 63, 65 (C.A.A.F.2000)). Failure to timely comment on matters in the SJAR or on matters attached to the SJAR waives any later claim of error in the absence of plain error. R.C.M. 1106(f)(6); *United States v. Scalo,* 60 M.J. 435, 436 (C.A.A.F.2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial

right [of the appellant].' " *Scalo,* 60 M.J. at 436 (quoting *Kho,* 54 M.J. at 65). Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least some "colorable showing of possible prejudice." *Id.* at 437.

The SJAR incorrectly stated the maximum possible sentence included 15 years of confinement and forfeiture of all pay and allowances. As this is a special court-martial, clearly the maximum possible sentence would include confinement for 1 year and forfeiture of two-thirds pay per month for 1 year. R.C.M. 201(f)(2)(B). The appellant waived this error by failing to raise the issue; thus, we review for plain error. The error certainly occurred in this case and it was plain and obvious. The real issue is whether a substantial right of the appellant was prejudiced. In review of the entire record, we conclude the appellant was not prejudiced. The appellant's misconduct was egregious. Not only did she blatantly fail to follow lawful orders, but she lied about it when confronted. The appellant was a noncommissioned officer who thumbed her nose at the rules and put herself and others at risk by her inexcusable misconduct. The military judge imposed a sentence well below the maximum possible sentence for a special court-martial. Given the seriousness of the appellant's offenses, we are convinced the error in reporting the maximum possible sentence would not have impacted the convening authority's clemency decision. Thus, we conclude the appellant was not materially prejudiced by the error.

### Conclusion

The approved findings and sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000).

Accordingly, the approved findings and sentence are

AFFIRMED.