****CORRECTED COPY – DESTROY ALL OTHERS****

# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38971**

————————————

**UNITED STATES**
*Appellee*

**v.**

**William E. SMITH**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 May 2017

————————————

*Military Judge:* Brendon K. Tukey.

*Approved sentence:* Bad-conduct discharge, confinement for 6 months, reduction to E-3, and a reprimand. Sentence adjudged 21 August 2015 by GCM convened at Luke Air Force Base, Arizona.

*For Appellant:* Major Johnathan D. Legg, USAF; Ernesto Gapasin, Esquire.

*For Appellee:* Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before J. BROWN, SANTORO, and MINK, *Appellate Military Judges*.

Judge SANTORO delivered the opinion of the court, in which Senior Judge J. BROWN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SANTORO, Judge:

At a general court-martial, a military judge accepted Appellant's guilty plea to misusing his government travel card (GTC), in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892. Contrary to his

pleas, officer members convicted Appellant of attempting to and intentionally exposing his genitalia to, and maltreating, Airman First Class (A1C) AH, in violation of Articles 80, 93, and 120c, UCMJ, 10 U.S.C. §§ 880, 893, 920c.[1] The adjudged and approved sentence was a bad-conduct discharge, confinement for six months, reduction to E-3, and a reprimand.

Appellant's brief identifies five assignments of error:

I. WHETHER APPELLANT'S AREA DEFENSE COUNSEL (ADC) WERE INEFFECTIVE WHEN THEY FAILED TO CALL WITNESSES WHO WOULD HAVE REVEALED A LACK OF CREDIBILITY ON THE PART OF AH.

II. WHETHER APPELLANT'S ADC WERE INEFFECTIVE WHEN THEY WROTE APPELLANT'S UNSWORN STATEMENT AND HAD HIM CONCEDE GUILT AGAINST APPELLANT'S DIRECTION.

III. WHETHER APPELLANT'S ADC WERE INEFFECTIVE WHEN THEY FAILED TO PROPERLY PREPARE FOR PRESENTENCING AND DID NOT INCLUDE RELEVANT MITIGATION EVIDENCE.

IV. WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE ADMISSION OF TEXT MESSAGES BETWEEN APPELLANT AND AH WHICH DID NOT REFLECT SEXUALLY CHARGED CONTENT AND THEREFORE REBUTTED AH'S TESTIMONY.

V. WHETHER APPELLANT'S CONVICTION FOR SEXUAL ASSAULT IS LEGALLY AND FACTUALLY SUFFICIENT.

This court's rules of practice require that each error for which appellate review is sought must be separately set forth. A.F. CT. CRIM. APP. RULE 15(a). Although Appellant's civilian counsel specifically set forth the five errors noted above, his meandering brief is peppered with claimed errors and irregularities that are not related to the five assigned errors.[2] His failure to comply with this

---

[1] Appellant was acquitted of sexually assaulting A1C AH by touching her buttocks through her clothing.

[2] Appellant's military counsel did not sign this brief.

court's rules waives consideration of those alleged errors not set forth with specificity.[3]

# I. BACKGROUND

Appellant, the unit superintendent and acting first sergeant, attempted to develop an inappropriate relationship with A1C AH, a member of his 20-military member squadron. He intentionally exposed his genitalia to her on one occasion, attempted to do so on a second occasion, made sexually-suggestive comments to her, and touched her inappropriately on multiple occasions. He also improperly used his GTC on multiple occasions to pay for personal expenses while he was not on official travel.

# II. DISCUSSION

## A. Ineffective Assistance of Counsel

The first three assignments of error claim that trial defense counsel were ineffective in various ways. Appellant submitted an affidavit supporting his claims.[4] We ordered his trial defense counsel to submit affidavits in response.

To establish ineffective assistance of counsel, Appellant "must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under the first prong, Appellant has the burden to show that his "counsel's performance fell below an objective standard of reasonableness—that counsel was not functioning as counsel within the meaning of the Sixth Amendment." *United States v. Edmond*, 63 M.J. 343, 351 (C.A.A.F. 2006) (quoting *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005)). The question is, therefore, "did the level of advocacy 'fall[] measurably below the performance . . . [ordinarily expected] of fallible lawyers?'" *United States v. Haney*, 64 M.J. 101, 106 (C.A.A.F. 2006) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)) (alterations in original). Under the second prong, the deficient performance must prejudice the accused through errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Tippit*, 65 M.J. 69, 76

---

[3] Despite Appellant's counsel's failure to comply with our briefing rules, we have considered the entire record of trial, including those issues Appellant mentions in passing. We decline to discuss them separately as we conclude that they warrant no relief. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

[4] Much like his counsel's brief, Appellant's affidavit attacks virtually every aspect of his relationship with his counsel and the conduct of the trial.

(C.A.A.F. 2007) (quoting *Strickland*, 466 U.S. at 687). Counsel is presumed competent until proven otherwise. *Strickland*, 466 U.S. at 689.

### 1. Failure to call witness to attack A1C AH's credibility

Appellant claims his counsel were ineffective by failing to call Major (Maj) QN and Ms. GG as witnesses during the defense case-in-chief. Although his brief claims that Maj QN "could have provided testimony that would have created doubt as to AH's rendition of the time line," Appellant has submitted no evidence from which we could draw that conclusion. Appellant submitted nothing from Maj QN and his own affidavit on this point states only that "[t]he timeframe and the place of the alleged incident was impossible with the testimony of my supervisor, Maj [QN]," and that he "would have created doubt as to AH's time line of events."

Appellant's proffer of what Ms. GG would have said is equally sparse. His brief asserts that Ms. GG would have been able to rebut the testimony of a government witness who heard A1C AH crying in Appellant's office by testifying that "she never heard anyone crying."

Maj MB, Appellant's senior defense counsel, flatly denied that Appellant gave him a list of witnesses "before, during, or after the trial," but noted that Appellant did provide the defense paralegal with a list of witnesses for sentencing. Maj MB also outlined the defense team's belief that they called sufficient witnesses to impeach A1C AH and also their concern that certain witnesses might open the door to evidence that Appellant had made similar sexually-inappropriate comments to other subordinate Airmen, information they successfully moved to exclude from trial.

Mr. (then-Captain) MS, Appellant's area defense counsel, also submitted an affidavit detailing his pre-trial preparation. Although Mr. MS did not directly address Appellant's contention that he asked his attorneys to contact Maj QN and Ms. GG, he stated that the defense team interviewed over 13 witnesses, including Appellant's co-workers, and visited the office in which some of the criminal conduct was alleged to have occurred. Mr. MS noted that their investigation led to the discovery of several witnesses who believed A1C AH was an untruthful person. The Defense called three to testify at trial about A1C AH's character and/or reputation for being untruthful. They also called other witnesses to describe the physical layout of the squadron offices in an attempt to undermine A1C AH's credibility. Finally, Mr. MS stated that Appellant provided a list of sentencing witnesses to the defense paralegal.

Appellant has failed to meet his burden to establish that his counsel were ineffective by failing to have Maj QN and Ms. GG testify. He has failed to "establish[] a foundation for his claim by demonstrating that specific individuals would have provided the court with specific testimony." *United States v.*

*Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997). He has made no claim that he could not have obtained affidavits from these potential witnesses in conjunction with his appeal or asked for judicial assistance in that regard. "In the absence of such information or some explanation as to why it could not be obtained, it would be inappropriate under *Strickland* for this Court to presume counsel's ineffectiveness for failing to call witnesses." *Id*.

Moreover, trial defense counsel *did* call witnesses who directly attacked A1C AH's credibility. Seven witnesses testified in the Defense case-in-chief and each one of them challenged some aspect of A1C AH's testimony. Four of the seven testified that, in their opinion, A1C AH was an untruthful person. Even assuming as true the very limited facts in Appellant's affidavit, we would be hard-pressed to conclude that Maj QN and Ms. GG's testimony would have been anything but cumulative.

### 2. The unsworn statement

Appellant next contends that his counsel wrote and delivered his unsworn statement against his wishes, and in doing so conceded his guilt. With respect to this claim, Appellant's affidavit states:

> I did not agree with what was written which is why my ADC read it. The unsworn statement that was shown to me on the day of sentencing was not mine and it was not one that I drafted. I also never wanted to concede guilt to the charges we fought in court. [The ADC] read the unsworn statement and conceded guilt against my wishes.

The record of trial reflects that prior to delivering an oral unsworn statement on Appellant's behalf, his defense counsel stated, "Members this is an obviously stressful time for Master Sergeant Smith so he asked that I stand up here for him and make this statement." Counsel then read a statement on Appellant's behalf. Appellant, sitting at counsel table, voiced no objection when this occurred.

Neither in his brief nor in his affidavit does Appellant identify any portion of the statement that he contends conceded guilt. As a threshold matter, we note that Appellant *did* plead guilty to misusing his GTC so not only would some concession of guilt not be inconsistent with his trial strategy, his admission of guilt was also already known to the court members.

Moreover, we see nothing in the oral unsworn statement that concedes his guilt. The statement, in its entirety, was

> Good afternoon. Thank you all for being here and taking time out of your busy schedules. The most important thing in my life is my family; my wife E[] and my three children, W[], E[] and

> E[]. I'm a man and I have failings and shortcomings but I do love my family with all my heart. Thank you E[] for standing with me for these last two years as we've lived with this over our heads. You have been my peace and clarity throughout this process. To my kids who aren't here today, I love you. You inspire me every day that you wake up. I pray that you grow up to be strong, wise and loving men and women. I will always be proud of you and will always love you. I've learned many lessons from this experience and I respect the decision that you have made today. I know that I will have to live with this for the rest of my life. The hardest part is knowing that I might not be able to be there for some of my children's lives from now on because I may have to register as a sex offender depending on where I live. As a registered sex offender I won't be able to coach E[] and E[] as they grow up the way I have with W[]. Those experiences with W[] have been some of the best of my life and I'll miss making these memories with my younger kids. I ask that you not discharge me so that I'm allowed to retire soon. No matter what you decide, I promise that I will continue to grow from this and will be a better airman, husband and father.

Appellant's second claim, that the oral unsworn statement was not his, is equally without merit. We first note that there is no requirement that an accused draft his own statement without the assistance of counsel; to the contrary, defense counsel frequently assist a non-legally trained accused to shape a statement that will be most effective in extenuation and mitigation. Therefore, the true question is: did Appellant intend to adopt the contents of his statement as his own, or did his counsel present the statement without his authorization?

Trial defense counsels' affidavits are clear, consistent, and credible and unequivocally state that after Appellant became emotional hearing his wife testify, he asked that his defense counsel read the statement on his behalf. Appellant's own affidavit concedes that his wife became distraught while testifying.

Trial defense counsels' affidavits are supported by, and Appellant's undermined by, the contents of a two-page written statement which both Appellant and his appellate defense counsel concede *was* written by Appellant himself. That written unsworn statement described his relationship with his wife and children in nearly identical terms as the oral unsworn statement. The written unsworn statement concludes:

> I know that as a result of this conviction, I'll likely have to register as a sex-offender in many states. This will prevent me from coaching E[]'s and E[]'s youth sports teams, as I always did for

W[]. I won't get to spend the valuable time with my kids that means so much to me.

I also know that even if I don't receive a Bad Conduct Discharge, I'll still be administratively discharged from the AF. Either way, my almost 20 year career is over. I've been in the Air Force for nearly 18 years now—it's been not only my career, but my life as well. I ask that you please not punitively discharge me from the Air Force that I've served for nearly my entire adult life. My family relies on me, and I need to be there to provide for them.

Thank you very much for your attention during the trial this week. I believe I received a fair trial from you. I pray that the Air Force still has faith in me, just as I have faith that any decision the Air Force makes will be the right one.

The record does not support Appellant's claim that the oral unsworn statement conceded guilt or that his counsel did not have his authorization to present it to the members. Even assuming defense counsel did not have Appellant's consent, we see no possible prejudice as Appellant's written unsworn was not materially different from the statement made on his behalf by his counsel.

### 3. Failure to prepare for sentencing and failure to present evidence in mitigation

Appellant's final claim that his counsel were ineffective asserts that they did not prepare for his sentencing case because the only witness they called on his behalf in sentencing was his wife. He asserts that he told his defense counsel to contact Maj QN, SrA MH, and TSgt AC, all of whom, he says, would have testified on his behalf in sentencing. Appellant's affidavit is silent on what these three witnesses would have said had they testified, nor did he submit affidavits from them or explain why he could not.

In addition to the affidavits submitted by trial defense counsel, the Government also submitted an affidavit from the paralegal, Technical Sergeant (TSgt) SF, who assisted them. TSgt SF said that he personally contacted potential character witnesses from a list Appellant provided. TSgt SF summarized his interaction with these potential witnesses:

Interviews with these individuals revealed that then-MSgt Smith was not well respected as a leader and [senior non-commissioned officer]. Most of these witnesses refused to provide a character letter or testify in court on his behalf. Further, several of these individuals revealed information during these interviews that would have damaged our defense . . . had they testified.

By failing to provide the specific testimony that these individuals would have provided, Appellant has not met his burden under *Moulton*. Moreover, the unrebutted evidence is that the Defense team did, in fact, contact Appellant's prospective witnesses, none of whom would have supported his case. He has thus failed to establish that his counsel were ineffective.

## B. Exclusion of Text Messages

During the findings case, A1C AH testified that she and Appellant occasionally exchanged text messages. There was no claim by either side that the text messages were relevant to the charges in this case. A member of the court-martial asked for a copy of the text messages. Trial defense counsel objected and asked that the military judge decline to admit the text messages. The military judge sustained the objection and excluded the text messages.

Appellant's counsel now contends that the military judge erred and in doing so avers that the trial counsel objected to the messages' admission. However, the record of trial indicates that the military judge sustained trial defense counsel's objection, not the trial counsel's objection. Appellant cannot claim error on appeal when the military judge did as he asked at trial. *United States v. Ahern*, __ M.J. __, No. 17-0032/AR, 2017 CAAF LEXIS 292, at *7 (C.A.A.F. 20 Apr. 2017) (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

## C. Factual and Legal Sufficiency

Appellant's final assignment of error contends that his conviction for sexual assault is factually and legally insufficient. Appellant was found not guilty of this offense, leaving nothing about this specification for our review.[5]

---

[5] As noted above, Appellant's brief repeatedly injected assertions that were irrelevant to the assignments of error in which they were included. Much of Appellant's argument about factual and legal sufficiency attacks A1C AH's credibility generally. We have reviewed the entire record of trial, paying particular attention to Appellant's arguments, and conclude that the evidence was both legally and factually sufficient to sustain his convictions. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) (factual sufficiency established if we are convinced of Appellant's guilt beyond a reasonable doubt); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (legal sufficiency established if rational trier of fact could have found all essential elements proven beyond a reasonable doubt).

### III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[6]

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[6] The court-martial order (CMO) fails to reflect the military judge's finding of not guilty, pursuant to Rule for Courts-Martial 917, to a portion of the Specification of Charge V. The CMO also erroneously omits words from the specifications of Charges IV and V. We direct completion of a corrected CMO.